HERBERT FOX, DEFENDANT IN ERROR, v. KINNEAR PRESSED RADIATOR COMPANY, PLAINTIFF IN ERROR.

Argued June 25, 1907—Decided November 18, 1907.

1. The plaintiff, an employe of the radiator company, was injured while operating a die-cutting machine. He complained to the foreman that the machine was out of order, that the safety clutch had slipped, letting the knives drop on the die. He was instructed to go back to work and was told that the machine would be repaired. Within an hour after he resumed work the safety clutch again slipped and the plunger came down, cutting off three fingers. The evidence of the plaintiff was that, after cutting each piece of metal, and after the knives had moved up, held by the safety clutch, it was necessary for him to remove, with his fingers, the waste material from the die upon which the cutter fell; that no other means was provided. There was a conflict of testimony. *Held*, that the question of negligence was for the jury.
2. A declaration that the knives of a die-cutting machine were defective did not confine the plaintiff's proof or limit his cause of action to a defect in the blades, but included a defect in the safety catch, by reason of which defect the mechanism failed to hold the knives in place and until released by the operator.

---

In tort.     On error to the Essex Circuit Court.

For the plaintiff, defendant in error, *Samuel Kalisch, Jr.,* and *Samuel Kalisch.*

For the defendant, plaintiff in error, *Guild, Lum & Tamblyn.*

The opinion of the court was delivered by

DILL, J.   The assignments in error deal with the refusal of the trial judge to take the case from the jury and direct a verdict in favor of the plaintiff in error, who was the defendant below.

The action was brought by an employe of the radiator company for damages for the loss of three fingers while he was operating a Bliss power press, a die-cutting machine operated by steam power.

The press contained a slide, or "plunger," as it is sometimes called in the testimony, to which the cutter or blade was attached, and at the base of the machine was the die, which was attached to the bed or the bolster of the press. When at rest the cutter was held suspended by a clutch, sometimes called the "safety catch." When the operator pressed the treadle of the machine with his foot the safety catch or latch was released, which in turn released the clutch, bringing down the knife attached to the bottom of the slide, or plunger, engaging with the die attached to the bed of the press. After the knife had come down it forthwith was mechanically returned to its position in the upper part of the machine, and was there held by the safety catch until again released by the pressure of the foot on the treadle.

About half-past eleven o'clock in the forenoon of the day of the accident, while the plaintiff was working at the machine, the slide or cutter fell without his touching the treadle. He went to the foreman of the defendant and told him that the machine stuck; that the cutter had come down without his pressing upon the treadle, and that the press was out of order. To this the foreman replied: "Go back to work; I will have it fixed."

Under the facts in this case the notice to the foreman was notice to the company, and the instructions of the foreman were the instructions of the company.

The plaintiff did not, however, resume work until about one o'clock, when, as he testifies: "I was working at the press, and I had cut one slip off and laid my work aside, and went to shove the dust out, and down she came. The catch had stuck and the shaking of the machine worked her right out again, and she came down on my fingers."

There was other evidence of similar import as to how the accident happened and the cause thereof.

The accident happened within an hour after the plaintiff had resumed work in the afternoon.

As to how the plaintiff came to have his fingers under the knives, his testimony was that, in the usual method of working the machine, after the die had cut out the piece of metal and had returned to its original position, held there by the safety catch, it was necessary to remove the waste material from the die, otherwise the die would be injured when the knife was brought down the next time. The plaintiff testified that he swept out the waste material with his fingers because there was nothing else provided for that purpose, and he had to use his fingers. He was so doing when the accident occurred.

The assistant foreman of the radiator company, called as a witness in its behalf, testified on cross-examination that it would not be dangerous for a person to remove the waste from under the die with his fingers so long as he did not put his foot on the treadle and the machine was in perfect condition.

There was evidence from which the jury might have found that the safety catch or clutch on the machine was out of order, and that this was the trouble when the complaint was made, and was the cause of the accident.

The case went to the jury, and the verdict was against the defendant below.

The plaintiff in error (the defendant below), at the close of the plaintiff's case, made a motion for a nonsuit, and at

the close of the case moved for a direction of the verdict on three principal grounds: First, that the proof differed from the declaration, and that there was a fatal variance between the declaration and the evidence, inasmuch as the declaration complained of the negligence of the defendant in permitting the knives of the power press to be defective and out of repair, while the evidence was, not that the knife blades were defective, but that the safety catch or clutch holding the slide, or plunger, to which the blades were attached, was defective, and hence the accident.

It is insisted that the declaration, in charging that the knives were defective, confined the plaintiff below in his proof to a defective blade or blades, although the declaration also charged that the power press was defective and out of repair. The allegation that the knife was defective would properly include and admit proof of a defect in any component part of the machine which went to make up the cutting mechanism. The declaration, in charging a defect in the knives, did not limit the plaintiff or his proof to a defect in the blades. Similarly a specification that a knife was defective would allow proof of a defect in the handle as well as in the blade of the knife.

The point raised is highly technical, and cannot be sustained.

In the next place, the insistment is that there was no evidence of negligence on the part of the defendant. The answer is that there was evidence from which the jury might find negligence. Briggs, the foreman of the radiator company, called by the defendant, testified: "The accident was either the machine's fault or the operator's fault."

There was a conflict of testimony. The issues were rightfully submitted by the judge to the jury, with proper instructions as to the law of the case.

Finally, the main ground of attack upon the judgment is that the plaintiff's case should have been dismissed and that a verdict should have been directed for the defendant, because it appeared from the evidence that the danger was so immi-

nent and so obvious that, in spite of the promise to repair on the part of the employer, the employe continued the work at his own risk.

Upon this point the court correctly stated the rule of law when he charged the jury that "if a workman complains to his employer of a defect in a machine, and the employer, as an inducement to the workman to continue in his employment, promises to remedy the defect, the employer, by so doing, relieves the workman from the assumption of whatever risk to him is naturally incident to the existence of such a defect, unless the risk is so imminent that no prudent man would run it."

And again: "The effect of this notice and promise was to relieve Fox from the assumption of whatever risk to him was naturally incident to the existence of such a defect, unless the risk was so imminent that no prudent man would run it. Notwithstanding the notice and promise, Fox still assumed whatever risk was not naturally incident to the existence of the defect complained of, and also whatever risk was so imminent that no prudent man would run it. If the injury occurred from a risk of either of these kinds the workman took that risk, and cannot recover."

As was said by Mr. Justice Swayze, in the Dunkerley case: "The question of the imminence of the danger was for the jury. Although the defect in the machine was obvious, it was a fair question whether the risk of an accident was so imminent that no reasonable man would have continued to work. The evidence shows that the superintendent of the defendant and the plaintiff thought the danger was not so imminent that the work should be stopped." *Dunkerley* v. *Webendorfer Machine Co.*, 42 *Vroom* 60 (at *p.* 63).

In the present case, as in *Dowd* v. *Erie Railroad Co.*, 41 *Vroom* 451, the question as to whether the danger was so imminent was for the jury.

The charge of the court was, if anything, favorable to the defendant. It was explicit upon all disputed points, and it quite correctly and fully stated the law applicable, following

the principles laid down by this court in *Andrecsik* v. *New Jersey Tube Co.,* 44 *Vroom* 664.

No other assignments of error call for special comment. The judgment below should be affirmed.

*For affirmance*—MAGIE, CHANCELLOR, THE CHIEF JUSTICE, GARRISON, HENDRICKSON, PITNEY, REED, TRENCHARD, BOGERT, VREDENBURGH, VROOM, GREEN, DILL, J.J.    12.

*For reversal*—None.