## SAMUEL JOHNSON *v.* BOSTON & MAINE RAILROAD.

### January Term, 1905.

Present: ROWELL, C. J., TYLER, START, WATSON, HASELTON, and POWERS, JJ.

### Opinion filed February 2, 1906.

## *Master and Servant—Assumption of Risk—Defective Locomotive—Overhead Bridge—Fellow Servant.*

A servant assumes not only the risks ordinarily incident to his employment, but also any unusual and extraordinary risks arising from the negligent performance of the master's duties, which the servant comprehends and chooses to encounter.

In an action by a freight brakeman against a railroad for injuries received by colliding with a dangerously low overhead bridge, while on top of a freight car and blinded and choked by unusual quantities of smoke and steam emitted from defendant's defective locomotive, evidence examined and *held* that, as plaintiff continued in the service of defendant after he knew all about the low bridge and the defective locomotive and comprehended the dangers arising therefrom, he thereby assumed those dangers as among the risks incident to his employment.

In an action by a freight brakeman against a railroad for injuries received by colliding with a dangerously low overhead bridge while on top of a freight car, the negligence of the fireman, who is not shown to be incompetent, in throwing coal into the furnace, while the train was on a down grade, thereby causing the locomotive to emit an unusual quantity of smoke which blinded plaintiff, was the negligence of a fellow-servant and cannot avail plaintiff.

Plaintiff testified that he thought he was struck by ice hanging from the bridge, and insisted that this alone was evidence sufficient to sustain a verdict in his favor. *Held*, that, as there is nothing in the record tending to show whether this opinion was well founded, nor anything tending to show that this condition was not usual and incident to his employment, it cannot avail plaintiff.

CASE for negligence. Plea, the general issue. Trial by jury at the December Term, 1903, Windsor County, *Munson, J.,* presiding. Verdict ordered for the defendant, and judgment thereon. The plaintiff excepted. The opinion states the case.

*R. E. Stevens,* and *Frank Plumley* for the plaintiff.

Defendant was negligent in allowing the locomotive to be out of repair. *Carbine* v. *R. R. Co.,* 61 Vt. 351; *Bancroft* v. *R. R. Co.,* 67 N. H. 466; *Demars* v. *Glen. Mfg. Co.,* 67 N. H. 406; *Shaw* v. *Sheldon,* 103 N. Y. 667; *Anderson* v. *Clark,* 155 Mass. 368.

*Hunton & Stickney* for the defendant.

A servant assumes all ordinary risks incident to his employment, and all risks which exist because of the master's negligence and which the servant knows, apprehends, and chooses to encounter. *Gibson* v. *Erie Ry. Co.,* 63 N. Y. 449; *DeForest* v. *Jewett,* 88 N. Y. 264; *Buzzell* v. *Laconia Mfg. Co.,* 48 Me. 113; *Baylor* v. *R. R. Co.,* 30 N. J. (Law) 23; *B. & O. R. R. Co.* v. *Stricker,* 51 Md. 47; *Devitt* v. *Pacific R. R. Co.,* 50 Mo. 302; *Smith* v. *Ry. Co.,* 69 Mo. 62; *Caguey* v. *R. R. Co.,* 69 Mo. 416; *Ladd* v. *New Bedford R. R. Co.,* 119 Mass. 412; *Burnham* v. *R. R.,* 68 N. H. 567; *Young* v. *R. R.,* 69 N. H. 356; *Hardy* v. *Railroad,* 68 N. H. 523; *Allen* v. *Railroad,* 69 N. H. 271; *Deschenes* v. *Railroad,* 69 N. H. 285.

POWERS, J. The plaintiff seeks damages for injuries sustained in the defendant's service at Lebanon, N. H., on January 2, 1902. At that time he was, and for more than eleven years prior thereto had been, employed by the defendant as a

freight brakeman running usually between Concord, N. H., and White River Junction, Vt. During all that time there had been maintained at Lebanon an overhead bridge spanning the defendant's track, so low as to endanger one passing under it on the top of a freight car and compel him either to descend between the cars or lie flat upon the car to escape its perils. On the day named, the plaintiff's train reached Lebanon between eight and nine o'clock in the evening. It was a moonlight night, and freezing. From Lebanon toward White River Junction the defendant's road is descending, and agreeably to the defendant's rule, the plaintiff was at his post on top of the fourth car from the engine as the train left the station at Lebanon and approached this dangerous bridge. The plaintiff knew all about the bridge and its dangers, and being then mindful of its perils, in conformity with a custom which he had observed during the entire period of his employment on the road, as the train approached the bridge, he lay face-downward prone upon the car that he might pass under in safety. He was surrounded with a cloud of smoke and steam so dense as to completely envelop him and cut off his view of objects about him, and being choked by the smoke, steam and gas from the engine, he raised his head to catch breath, and came into violent contact with the bridge itself or the ice depending therefrom, and was severely injured. A verdict was directed for the defendant in the court below, and to that direction the plaintiff excepted.

This accident happened in New Hampshire, but we need not pause to consider whether we are to apply the law of that State or our own; for, upon the questions raised by this record, their decisions are in entire accord with ours. The law of the case is found in the rule, variously stated in the different cases, but so far as applicable here, amounting to this: The servant assumes not only the risks ordinarily incident to his

employment, but such unusual and extraordinary risks as he knows and comprehends. *Carpenter's Admr.* v. *Railroad Co.,* 73 Vt. 336; *Morrisette v. Railroad Co.,* 74 Vt. 232; *Kilpatrick* v. *Railroad Co.,* 74 Vt. 288; *Leazott* v. *Railroad,* (N. H.) 45 Atl. 1084; *Burnham* v. *Railroad,* (N. H.) 44 Atl. 750. So it is that a servant, when in the course of his employment, a special and obvious risk is presented to him,—one not ordinarily incident to the business,—may, as a rule, decline to accept it; but if he choose to encounter it, he assumes it. And this is so though the risk arises from the negligent performance of the master's duties. *Talbot* v. *Sims,* (Pa.) 62 Atl. 107; *Furnace Co.* v. *Abend,* 107 Ill. 44. This case, then, so far as the dangers arising from the low bridge are concerned, comes within the decisions in *Carbine's Admr.* v. *Railroad,* 61 Vt. 348; *Allen* v. *Railroad,* 69 N. H. 271, and many such cases. For the plaintiff knew all about the bridge and the dangers arising from it, and by continuing in the services had assumed these as among those incident to his employment.

Indeed, this proposition is not seriously questioned; but the plaintiff insists that he was at the time of the accident subjected to an unusual and extraordinary hazard, in that the engine hauling this train was defective, and leaked steam in extraordinary volume; that this was a condition which ought not to have existed, and would not have existed but for the negligence of the defendant, and consequently was not a danger assumed by him; and that this condition was a proximate cause of the injury, and affords a legal basis for a recovery. And so it does, unless, as we have seen, the condition and its dangers were known to and voluntarily incurred by him.

That the condition of this locomotive was as plaintiff claims, and that such condition resulted from the negligence of the defendant, is not denied. But the record shows that its condition had been the same in respect to leaking steam in

unusual quantities all the way from Concord. Not only that, but it appears that the engines generally on the defendant's road were in bad condition in the respect indicated at the time of this accident. All this was known by the plaintiff. The risk of being blinded and choked by the usual volume of smoke and steam necessarily emitted from the locomotive while passing under the low bridge was one of the ordinary hazards of the service. *Hardy* v. *Railroad,* 68 N. H. 536. The increased danger arising from an engine leaking unusual quantities of steam was as obvious to the plaintiff as to the defendant; and it must be held that the plaintiff, by continuing in the service with full knowledge, assumed the increased hazard—that of passing under a dangerously low bridge while enveloped in an unusual cloud of steam emitted from a leaky engine.

It is further insisted by the plaintiff that there was evidence in the case tending to show that the plaintiff was struck by the ice depending from the bridge, and that this affords evidence of the defendant's negligence sufficient to sustain a recovery. The only evidence on this subject was the statement of the plaintiff to the effect that he thought that he was struck by the ice on the bridge, and there is nothing in the record to show whether this opinion was well founded or otherwise. Nor is there anything in the record tending to show that the condition in this respect at the time of the accident was unusual. For aught that appears it was usual for ice to form on the bridge as it had that night. It was encumbent on the plaintiff to show this—to show an unusual condition—for the ordinary condition in this respect was, like the others, covered by his assumption of risk.

Nor would the negligence of the fireman, if any, in throwing into the furnace fresh coal on a down grade while the brakemen had to be on top of the cars, contrary to the custom of the firemen, thereby causing a dense volume of smoke and

gas to be emitted, avail the plaintiff. For this would be the negligence of a fellow servant, not shown to have been incompetent, which could not form the basis of a recovery.

*Judgment affirmed.*