THOMAS M. ANDERSON *vs.* THOMAS H. MARRINAN & another.

Middlesex.     March 8, 9, 1909. — May 21, 1909.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Negligence*, Employer's liability.

At the trial of an action against the proprietor of a machine shop for personal injuries received by an employee caused by a spark flying from the pin of a tube expander into his eye when he struck the pin with his hammer, where there is evidence tending to show that the head of such a pin usually is not hardened, but is left soft, and that, when struck with a hammer used for such work, if properly annealed, it will not splinter but will "upset or roll over," and the defendant admits that the pin of the expander furnished to the plaintiff had been hardened, the question whether the defendant negligently furnished to the plaintiff a defective tube expander should be left to the jury.

A machinist, in entering the employ of the proprietor of a machine shop, does not assume the risk of injury due to a tube expander, which is furnished to him by his employer, being defective because it is too hard and because it therefore causes sparks to fly from it when it is struck with such a hammer as ordinarily is used for the purpose, if it appears that such a defective condition could not be discovered by visual inspection.

TORT for personal injuries alleged to have been received by the plaintiff while he was in the defendants' employ and to have been due to a defective condition of a tube expander which was furnished to him to work with. Writ in the Superior Court for the county of Middlesex dated January 27, 1905.

There was a trial before *Aiken*, C. J. The plaintiff testified that he was forty-one years old, that he had been a machinist for fifteen years or more, and that he had used tube expanders before, and had used the particular one which caused the accident three times; that on October 19, 1904, he was ordered by the defendants' superintendent to go the next morning at about three or four o'clock to a certain factory and expand the tubes of a boiler; that when he went to the shop of the defendants about three o'clock in the morning of October 20, before the shop was open, to get his tools, he found this tube expander lying beside his own box of tools inside the shop; that it was of the requisite size, and the only one of that size in the shop so far as he knew; that the defendants had a tool room which was locked at night; that "the practice was when a tool was wanted they asked the boss for it"; that the plaintiff took the tube expander and proceeded to the shop where the boiler was, and "rolled," i. e. expanded, a couple of boiler tubes, "the process being to strike with his machinist's hammer on the head of the pin of the tube expander, which, being tapering toward the other end, was thereby forced farther into a cylinder which formed part of the tool and was inserted in the end of the tube, and by being forced in operated to push outward some rolls which were inserted in the cylinder, and so expanded the end of the boiler tube"; that he started to roll a third tube and struck the head of the pin a square blow with his hammer when a flash occurred, and one or more small pieces of steel broke and flew from the head of the pin and pierced his left eye; that the tube expander showed bright spots where clipped off; that he subsequently tried to file the head of the pin, but the file would not "touch it" and that this indicated that it was very hard; that the defendant Marrinan stated after the accident in the presence of the plaintiff and others that he bought the tube expander hardened; that the plaintiff did not know at the time of the accident that the tube expander was hardened and could not tell by looking at it

whether it was hard or soft; that he had never seen tools when pounded on flash and break off as this one did; that he had never worked with them in the dark; that he had used cold chisels and prick punches many times, and that the parts of them on which he pounded were of soft steel; that he had worked on lathes, turning and boring, and turning shafting, and used all kinds of tools like an ordinary machinist.

There also was testimony by experienced machinists that the regular machinist's hammer is hard and that if a hardened piece of steel is struck with it the result is likely to be a flash and a flying off of a piece of steel with sufficient force to pierce the flesh or eye; that if the steel pounded on is annealed it will "upset" or roll over, but not fly off; that the process of annealing is by heating the steel red hot and letting it cool gradually without water; that the head of the pin of a tube expander is not usually hardened and should be soft; that the head of a tool pounded on becomes hammer-hardened from constant use, that is, its temper is increased by striking with a hammer; that the method of testing the temper of steel is by filing it, and if the file does not "touch" the steel it is hard and brittle.

At the close of the evidence for the plaintiff the presiding judge ordered a verdict for the defendants on the ground that the plaintiff assumed the risk of the accident as one of the risks of his employment; and the plaintiff alleged exceptions.

*A. F. Converse,* for the plaintiff.

*J. Lowell & J. A. Lowell,* for the defendants.

BRALEY, J.   It would have been competent for the jury to find from the testimony of the experienced machinists called by the plaintiff that the head of the pin of a tube expander is not usually hardened, but left soft, and that when struck with a hammer used for such work, if properly annealed it will "upset or roll over," but will not splinter, nor fly.   The defendants, having engaged to provide suitable appliances, admitted that the expander furnished had been hardened, and the inference properly could have been drawn, that because of this condition it had been rendered brittle and unsuitable for the plaintiff's use.   It was while the plaintiff was using this defective expander in the usual course of his work to enlarge a boiler tube, that a small piece of steel flew from the head, destroying the sight of his left eye.

But, if there was evidence of the defendants' negligence, they endeavor to retain the verdict ordered in their favor upon the ground that the plaintiff assumed the risk. It often has been decided that a servant does not assume the risk of defective ways, works or machinery whether at common law or under R. L. c. 106, § 71, unless the defects are either known, or obvious. *Jellow* v. *Fore River Ship Building Co.* 201 Mass. 464. *O'Maley* v. *South Boston Gas Light Co.* 158 Mass. 135. If believed, the plaintiff's evidence would have warranted a finding that the defective condition of the expander could not have been discovered by visual inspection, and that, although he was a machinist familiar with the working of iron and the ordinary use of steel tools, he never in his previous experience had observed a piece to break from them, or a flash, followed by a flying spark of steel, upon their being struck with a hammer when in use, until the accident. In entering into the defendants' employment, he moreover had the right to rely upon the assumption, that reasonably safe appliances would be provided, and to what extent, if at all, his previous general knowledge and the appearance of the expander should have led him as an ordinarily prudent man to test the hardness of its head before using it, was a question of fact for the jury. If the plaintiff assumed the risk of dangers incident to the business, he did not as matter of law assume risks of which, it could have been found, he neither had any knowledge nor any reasonable cause to anticipate. *Jellow* v. *Fore River Ship Building Co., ubi supra.*

We are accordingly of opinion that the case should have been submitted to the jury under appropriate instructions.

*Exceptions sustained.*