## Emery Lanoue vs. Clarence H. Nelson.

Middlesex.    January 15, 18, 1909. — June 24, 1909.

Present: Knowlton, C. J., Morton, Hammond, Loring, & Braley, JJ.

*Negligence*, Employer's liability.

In an action by a carpenter, under the employers' liability act, for personal injuries
alleged to have been caused by the negligence of the foreman of the defendant,
entrusted with and exercising superintendence, in causing a derrick used in
putting a heavy beam in place to be set in an improper position with refer-
ence to the beam, by reason of which the end of the beam knocked the plaintiff
off a wooden horse on which he was standing for the purpose of steadying the
beam while it was being put in place, it appeared that the plaintiff was a car-
penter of eighteen years' experience, during seven of which he had been in the
employ of the defendant, and that for the four or five weeks immediately preced-
ing his injury he had been at work on the same kind of work on which he was
engaged when he was hurt.   He was admitted to have been a competent and
experienced workman.   The work was comparatively simple in its nature, the
beams were not large, and he knew that they were likely to swing.   It was his
duty to guide one end of the beams into place.   He knew thoroughly the position
of the derrick and its relation to the place where the beam was to be put.   He had
placed the wooden horse on which he was standing between the derrick and the
end of the beam by direction of the foreman.   He testified, on cross-examina-
tion, that it would have been a safer position for him if the horse had been on the
other side of the column, on the top of which his end of the beam was to rest,
instead of being between that column and the derrick, and that, if the horse had
been in such other position, the beam, if it swung, would not have struck him.
He also said that "he knew that as the timber swings, things are likely to be
hit; and that he stood upon the horse for the purpose of steadying the timber,"
that "he knew that the timber was to be hoisted and went up there for the pur-
pose of guiding the timber and help steady the column, and that it was while
he was attempting to do this that the timber pushed him from the horse." *Held*,
that, assuming that the derrick was placed improperly, there was no evidence
of negligence or of failure of duty on the part of the superintendent toward the
plaintiff; that no warning from the superintendent would have given the plain-
tiff any information which he did not have already, and that the superintendent
had no reason to suppose that, so far as respected a man of the experience and
capacity of the plaintiff, there was any occasion to change the position of the
derrick or to give him any warning as to his conduct.

Tort for personal injuries sustained while in the employ of
the defendant.    Writ dated March 10, 1908.

The declaration alleged that the plaintiff on or about June 13,
1907, was employed by the defendant as a carpenter upon a cer-
tain brick building in process of erection by the Appleton Com-

pany over Robeson Street, so called, in Lowell, and was working under one Coram, who was employed by the defendant as foreman of the carpentry work on the building and was entrusted with and exercising superintendence over the work and whose sole or principal duty was that of superintendence; that by reason of the negligence of Coram in superintending the placing in position of a heavy timber in the building, the plaintiff, who was at the time engaged in the placing of the timber, was greatly injured; that the plaintiff was in the exercise of due care and diligence; and that the plaintiff gave the defendant due notice in writing of the time, place and cause of the injury within sixty days from the time of the accident.

On motion of the defendant the plaintiff filed three specifications, of which the third was waived at the trial. The other two were as follows:

" 1. Said superintendent was negligent in that he caused a certain derrick, used in placing in position the heavy timber referred to in the plaintiff's declaration, to be set in an improper position with reference to said heavy timber.

" 2. Said superintendent was negligent in that while said derrick was so improperly set with reference to the said heavy timber and while said heavy timber was connected with said derrick so improperly placed, he gave orders to the man in charge of and operating said derrick to hoist on the same, by reason of which said heavy timber struck the plaintiff and caused the injury complained of."

In the Superior Court the case was tried before *White,* J.

The plaintiff testified in direct examination that he had worked as a carpenter for eighteen years, for seven years employed by the defendant, and had been engaged for the defendant in the same kind of work as that under way when he was injured for four or five weeks before his injury. There was no question as to his being a competent and experienced workman.

It appeared in evidence that the work which was going on was the placing in position of a timber about twenty-five feet long, its other dimensions being ten by sixteen inches, and weighing about twelve hundred pounds, in the course of the erection of a mill in Lowell; that the timber was to serve as a floor beam to support the fourth floor of the mill and was being raised from

the third floor ; that when in position one end of this floor beam was to rest upon an iron plate in a brick wall while the other was to extend half way over the top of a wooden column eleven and a half feet high and eight and a half inches in diameter and was to rest upon an iron cap placed thereon; that a portable, single arm derrick was used in placing the timber in position, consisting of an upright stationary mast about twenty feet high, resting upon, and with its bottom fastened to, a timber forming its base, to which it also was connected by two wooden supports or braces, one on each side of the mast, extending from a few feet above its foot diagonally down to the base timber, while from the top of the mast two guy ropes, one on each side, extended at right angles with the base timber to further secure and steady the derrick when in operation ; that a pulley was set in the mast near its top through which ran a rope down to and connected with a drum or crank at the base around which it was coiled, the other end of the rope being left free to attach to the weight to be moved; that the derrick was operated by men standing at the base winding or unwinding the coil of rope by means of handles on the drum as it might be required to hoist or lower the weight ; that although the mast and pulley were stationary, the derrick could be inclined somewhat in either direction in which the guy ropes extended by lengthening and shortening the guy ropes as might be required to hold the derrick steady in such inclined position. It was admitted that during the process of handling such a timber as the one which caused the accident to the plaintiff, and while its weight was suspended upon it, this derrick could be moved readily, and that this had been done frequently ; that in order to set the floor beam in its proper position one man should stand on the brick wall near the iron plate thereon, the brick wall being then up to a level with the top of the column, to guide that end of the beam on to the iron plate while another man stood at the other end of the beam near the column to guide that end ; that in order to bring the man, who was to guide the column end of the beam to its proper place, into such position as would enable him so to do, a wooden horse about eight feet in height was employed, the top of which was about five feet long ; that in the floor of the mill where this work was progressing there was at the time an

opening twenty-seven feet long and eight feet wide begin-
ning at a point a few feet toward the wall from the column
and extending throughout most of its length beyond the column,
this opening having been left for the purpose of hoisting up
from the lower floors timbers, columns and other things, and,
before placing this wooden horse in the position which it occupied
at the time of the accident, a few planks were placed over part of
this hole to rest the horse on ; that at the time the accident hap-
pened the defendant himself was not present, but his foreman,
one Coram, mentioned in the declaration, was present directing
the work ; that the derrick was placed in position under Coram's
direction by the plaintiff and another employee.

It was not contended that the guy ropes were insecurely fas-
tened, or that the derrick slipped at all or moved of itself in any
way, during the subsequent events before the accident.

It further appeared that no floor beams previously had been
set on that floor but similar beams had been set in the same
manner on lower floors of the building, that, in the work of
placing these other beams, the plaintiff had stood on the wooden
horse near the column and had adjusted that end of the beam
thereon, and that upon the occasion in question and because of
the open space in the flooring above referred to, the plaintiff in-
quired of the foreman, before they began to hoist the beam, where
he should set the wooden horse; that the foreman thereupon
directed the plaintiff to board over a part of the open space near
where the base of the column was to rest, indicating the precise
portion to be so covered, and that the plaintiff did so, laying the
planks where the foreman, who was standing by, directed, and
stopping when and where the foreman directed; that the por-
tion of this opening so temporarily planked was such that the
only space afforded by it to set the wooden horse upon was close
to the base of the column and on the side of it nearest to the
derrick, so that in standing on the horse to adjust the end of the
timber on the column the plaintiff stood on the side of the col-
umn nearest to the derrick and between a line drawn from the
column to the iron plate on the brick wall and a line drawn
parallel thereto through the base of the derrick, with his face
turned toward the column and his back to the derrick and the
brick wall beyond.

The plaintiff testified in cross-examination that it would have been a safer position for him if the wooden horse had been on the other side of the column farthest from the derrick, so that when adjusting the beam he could have stood facing the column and the derrick and the brick wall beyond, that in such position the timber if it swung would not have struck him, and that he could have planked over that part of the open space so as to have set the wooden horse in such position as well as to have planked where he did, had the foreman ordered him so to do.

It further appeared in evidence that when the derrick was so set and the planking so temporarily laid, but before the column itself was raised or the wooden horse was set up, the loose end of the rope running over the pulley on the derrick was attached to the floor beam then lying near and about in front of the derrick, and that the men operating the derrick drum were ordered by the foreman to hoist; that at the same time the plaintiff and another workman procured the column and set it in position; that they did this by bringing it from some place near on the same floor, each carrying an end, and set it up ; that the plaintiff then got the wooden horse from where it was standing close by, leaving the other man holding the column in position, and set the horse in the place previously prepared for it ; that the plaintiff then mounted the horse with an iron cap, weighing some seventy or eighty pounds, and adjusted this to the top of the column, the beam having been in the meantime swung up by the operation of the derrick so that the end nearest the column was hanging just about over the column's top; that the plaintiff was a man of about medium height; that, having set the iron cap on the column, the plaintiff guided the end of the beam on to the cap, while another workman at the opposite end standing on the brick wall guided that end of the beam toward the iron plate fitted to receive it; that it then was found that the beam did not hang horizontally and that its heavier end was a little too far over the column while the other end was not quite far enough over the brick wall to fit in its proper position on the iron plate, but so swung, slanting downward toward the column, that it did not reach its proper place on the plate; that the foreman, who then was standing on the brick wall to assist in guiding that end of the beam, thereupon gave orders to the men

operating the derrick to " ease up," which was done, and the beam
thus was lowered until one end rested on the wall near the iron
plate and the other end on the column, but that neither end was
exactly in proper position; that the plaintiff, when the strain
was thus eased off the beam, left his place on the wooden horse
and came down to the floor as he testified, to " get something "
or to " do something," he did not recall just what; that the man
on the brick wall then, by the foreman's orders, crawled out on
the beam and moved the chain or rope connecting it with the
pulley a few inches toward the column and then returned to the
brick wall, whereupon the foreman from the brick wall ordered
the plaintiff to get back and guide that end of the timber; that
the plaintiff thereupon again mounted the horse, standing in the
position before described, with his back to the derrick, and the
foreman again ordered the men operating the derrick drum to
" hoist "; that immediately upon the execution of this order, the
beam instead of rising upward was pulled or swung against the
plaintiff, knocking him from the horse and occasioning the inju-
ries complained of, while at the same time the column, which was
then being further steadied by a man standing at its foot, was
pulled out from his control and fell, together with its iron cap,
in the same direction in which the plaintiff fell.

Upon cross-examination the plaintiff testified that he had
helped raise timbers in the same way many times and had helped
raise the timbers on the second and third floors on this job; that
when the derrick rope first lifts the timber, the latter usually
tips somewhat, owing to the fact that one end of it is likely to
be heavier than the other, but that until the beam has been
lifted it is practically impossible to tell which end, if either, will
prove to be the heavier; that on the occasion in question he did
not remember whether Coram gave him any order about procur-
ing the column or not, but knew that it was necessary to get a
column and that they might have got it at the proper time with-
out an order; that he did not remember whether any order was
given to get a horse, but thought that one was given; that he
knew some positions were more dangerous in which to set the
horse than others; that he knew that as the timber swings
things are likely to be hit; and that he stood upon the horse for
the purpose of steadying the timber; that when he mounted the

horse the second time he knew that the timber was to be hoisted and went up there for the purpose of guiding the timber and help steady the column, and that it was while he was attempting to do this that the timber pushed him from the horse.

There was no evidence that in any of his previous work guiding such floor timbers into position the plaintiff had stood with his back to the derrick.

The man who was stationed on the brick wall, one Eagan, was called as a witness by the plaintiff, and, besides his testimony, there was no other evidence except as to damages.

At the close of the plaintiff's case, the judge was asked to order a verdict for the defendant; and, upon the parties each agreeing that the damages sustained by the plaintiff amounted to $450, the judge ordered a verdict for the defendant, and, with the consent of the parties, reported the case for determination by this court. If the ruling was correct, judgment was to be entered upon the verdict; otherwise, judgment was to be entered for the plaintiff in the sum of $450.

*J. J. Devine,* for the plaintiff.

*F. E. Dunbar,* (*A. C. Spalding* with him,) for the defendant.

HAMMOND, J. There is no evidence that the order to hoist was not properly executed. Nor is there any evidence that it was given at an improper time. The workmen including the plaintiff were all prepared and needed no further warning. It was given at the time expected, for the purpose intended, and under the circumstances known to all. The only trouble was that it was given when, as contended by the plaintiff, the derrick was in an improper location. Under these circumstances the plaintiff must stand solely upon his right, if any he has, to hold the defendant responsible for the improper location of the derrick.

Even if it be assumed that the derrick was improperly located, — a question not without difficulty, — still the question remains whether, as against this plaintiff, there is any evidence of negligence or failure of duty on the part of the superintendent for which the defendant is answerable.

Upon an examination of the evidence we are of opinion that it would not have warranted a finding for the plaintiff on this issue. He was a carpenter of eighteen years' experience, during

seven of which he had been in the employ of the defendant. And there was no question as to his being a competent and experienced workman. Moreover, for four or five weeks immediately preceding his injury he had been at work on the same kind of work as that in which he was engaged when hurt. The work was comparatively simple in its nature. The beams were not large and he knew that they were liable to swing. It was his duty to guide one end of them into place. He knew thoroughly the location of the derrick and its relation to the place where the beam was to be put. He was upon the wooden horse when the beam was first hoisted and before the rope was readjusted so as to keep the beam nearer level when in the air. He testified upon cross-examination that "it would have been a safer position for him if the wooden horse had been on the other side of the column farthest from the derrick" on the top of which his end of the beam was to rest (instead of being between the column and the derrick as it actually was) "so that when adjusting the beam he could have stood facing the column and derrick and brick wall beyond and in such position that the timber if it swung would not have struck him." He also said that "he knew some positions were more dangerous in which to set the horse than others; that he knew that as the timber swings, things are likely to be hit; and that he stood upon the horse for the purpose of steadying the timber; that when he mounted the horse the second time, he knew that the timber was to be hoisted and went up there for the purpose of guiding the timber and help steady the column, and that it was while he was attempting to do this that the timber pushed him from the horse."

Here then was a competent and experienced mechanic, engaged in a work with which he was perfectly familiar and which was of a comparatively simple nature, all the circumstances being right before his eyes, including the location of the derrick and its relation to the column, the wooden horse, the wall and all other objects the relative position of which were of any materiality. He knew of a position perhaps safe in which the horse might be put to avoid exactly the thing which happened, namely, the timber striking him when it swung. Any warning from the superintendent would have given him no information which he did not already have. Under the circumstances the

superintendent had no reason to suppose that, so far as respected a man of the experience and capacity of the plaintiff, there was any occasion to change the location of the derrick or to give him any warning as to his conduct.

*Judgment upon the verdict.*