HENRY LEMIEUX *vs.* BOSTON & MAINE RAILROAD.

Essex.    November 4, 1914. — November 30, 1914.

Present: RUGG, C. J., HAMMOND, SHELDON, DE COURCY, & CROSBY, JJ.

*Negligence,* Employer's liability. *Conflict of Laws. Vermont. Statute. Evidence,* Proof of foreign law, Presumptions and burden of proof.

Where an employee receives injuries while at work in another State within the scope of his employment, his right of recovery in an action of tort against his employer is determined by the law of that State.

If, at the trial of an action of tort by an employee against his employer for personal injuries received in another State, no evidence as to the common law of that State applicable to the case is introduced, it will be presumed that the

common law of such other State applicable to the case is the same as that of Massachusetts.

Where an employee is injured in another State while at work within the scope of his employment, and brings in our Superior Court an action of tort against his employer to recover for such injuries, at the trial of which there is introduced no evidence as to the statutory law of that State, he cannot rely upon a count in his declaration based on St. 1909, c. 514, § 127, because no presumption arises that the statutory law of that State is the same as that of Massachusetts, and the Massachusetts statute has no extraterritorial force.

At common law, an employer of one engaged in assisting in the cutting off of rivets for the tearing down of a bridge fulfils his duty to provide for the employee's use reasonably safe tools if he provides a sufficient supply of such tools within convenient reach and permits the employee and his fellow workmen to select tools therefrom as they see fit during the progress of the work.

An employer is under no duty to instruct or to warn an employee as to a danger incident to his work when such employee, by reason of his experience and knowledge, is fully aware of such danger.

If, at the trial of an action in this Commonwealth by an employee against his employer for personal injuries received while at work in Vermont and alleged to have been caused by reason of negligence of the defendant in furnishing the plaintiff with unsafe, defective and dangerous tools, it is shown that by the law of Vermont an employee assumes not only the risks ordinarily incident to his employment but also such unusual and extraordinary risks as he knows and comprehends and that at the trial of an action against his employer for personal injuries the burden is on him to prove as part of his case that he did not know and comprehend the danger of the injury which he suffered, and if the plaintiff introduces no evidence that he did not appreciate the danger of the injury which he suffered and his testimony plainly shows that he fully realized it, a verdict should be ordered for the defendant.

Requirements of the common law of Vermont, that an employee assumes not only the risks ordinarily incident to his employment but also such unusual and extraordinary risks as he knows and comprehends, and that at the trial of an action against his employer for personal injuries the burden is on him to prove as a part of his case that he did not know or comprehend the danger of the injury which he suffered, do not relate merely to matters of procedure, but affect the right of such an employee to recover in an action in this Commonwealth against his employer for an injury received in Vermont in which such requirements of the law of Vermont are proved.

De Courcy, J.   The plaintiff, an employee of the defendant, was engaged in the work of tearing down a bridge at Barre in the State of Vermont.   At the time of the accident he was holding by the handle a wedge-shaped cutter which rested upon a rivet that was being severed, while a fellow workman, one Olmstead, was striking the cutter with a heavy hammer.   We assume that the jury could find that the plaintiff was in the exercise of due care, and that the piece of steel which struck him in the eye came from the cutter.

As the accident happened in Vermont the plaintiff's right to recover damages for his injury is determined by the law of that State. As was said by Rugg, C. J., in *Gould's Case*, 215 Mass. 480, 487: "The subject of personal injuries received by a workman in the course of his employment is within the control of the sovereign power where the injury occurs. 'It must certainly be the right of each State to determine by its laws under what circumstances an injury to the person will afford a cause of action,'" citing *Davis* v. *New York, New Haven, & Hartford Railroad*, 143 Mass. 301. If there had been no evidence introduced to the contrary it would be presumed that the common law of Vermont is the same as that of Massachusetts. *Cherry* v. *Sprague*, 187 Mass. 113. No such presumption arises, however, as to the statutory law of a sister State. If there is an employers' liability act in Vermont the plaintiff has not shown and the court cannot take judicial notice of its provisions. *Cormo* v. *Boston Bridge Works*, 205 Mass. 366. And the plaintiff cannot avail himself of the Massachusetts act, as that has no extraterritorial force. *Young* v. *Boston & Maine Railroad*, 168 Mass. 219. *Gould's Case*, 215 Mass. 480. This disposes of the third count in the declaration, which apparently is drawn under our statute.*

The other counts are at common law. The first alleges that the defendant negligently furnished the plaintiff with unsafe, defective and dangerous tools; and the second, that it negligently set him at a dangerous work without proper instructions or warning.

The facts, as they might be found in the view of the evidence most favorable to the plaintiff, are as follows: He was a man of large experience in the work he was doing at the time of the accident, and was fully acquainted with the danger arising from pieces of steel flying off the tools. The defendant supplied for the work a number of cutters in apparently good condition, and from these the plaintiff's fellow workman selected the one that later caused the injury. It was a tool of simple construction and easily understood. In its ordinary use the head of it was bound to become battered, flattened out and curled over by blows from the five or six pound hammer, especially when the blows were struck on the

---

* The action was tried before *Bell*, J., who at the close of the evidence ordered a verdict for the defendant. The plaintiff alleged exceptions.

edge of the head; and a chip or piece of the steel was likely to fly off under the force of the hammer. The experienced workman easily could observe this condition as the work progressed, and was free to select a fresh cutter from the supply of them at hand. The plaintiff's expert testified that if steel is brittle it will crack when struck with the hammer, and chips are likely to fly from it, whereas if the steel is in good condition, its surface would tend to burr over or spread out. But he added that it is impossible to tell whether the steel is soft or brittle until it is used; and that it is apparent to the man who uses it whether the blows from the hammer cause it to curl over, or to crack and chip off. And both experts testified that when the tool gets in poor condition, whether it flattens out or cracks, it is equally obvious to any person looking at it. In this case the person who was in the best position to see it was the plaintiff, who was holding it. Although in his brief the plaintiff refers to the condition of the hammer also, it is plain from an examination of the evidence that he relied on an alleged defective cutter. It does not appear that the hammer contributed to the accident; and in any event there is no evidence that the defendant did not have a supply of proper hammers at that place of work.

The law of Vermont applicable to these facts, so far as the issue of the defendant's negligence is concerned, is presumably the same as that of Massachusetts, as no evidence was introduced to the contrary. On this issue the duty of the defendant under the first count was to provide its employees with reasonably safe tools. If it provided a sufficient supply of these within convenient reach, and permitted the plaintiff and his fellow workmen to select therefrom as they saw fit during the progress of the work, its common law duty in this respect was performed. *Needham* v. *Stone*, 186 Mass. 565, and cases cited. *Cunningham* v. *Blake & Knowles Steam Pump Works*, 208 Mass. 68. The duty to warn or instruct the plaintiff, on which the second count is framed, existed only where it was reasonably required for his safety on account of the dangerous character of the work as known to the defendant or by reason of the inexperience of the plaintiff. There was no duty to instruct an experienced man that a piece of steel may be broken off a battered cutter by the heavy blow of a hammer when, judging by his experience, he was fully aware

of that fact. *Whalen* v. *Rosnosky*, 195 Mass. 545. *Korsman* v. *Rice, Barton & Fales Machine & Iron Co.* 198 Mass. 126. *Lanoue* v. *Nelson*, 202 Mass. 554. Without reciting the evidence in greater detail, it is plain that a verdict for the plaintiff on the second count would not be warranted.

We are inclined to say that the order of the trial judge directing a verdict for the defendant was warranted also as to the first count, on the ground that no negligent failure to supply the plaintiff with proper tools was shown. However that may be, we are of opinion that the plaintiff assumed the risk of the injury, and cannot recover on the first count for that reason. On this issue evidence was introduced to show that the law of Vermont, on which the plaintiff's right of recovery depends, is quite different from the law of this Commonwealth. Here the burden is on the defendant to allege and prove that the plaintiff assumed a risk which came into existence subsequent to the contract of employment. *Leary* v. *William G. Webber Co.* 210 Mass. 68. But by the common law of Vermont, as proved at the trial, an employee assumes not only the risks ordinarily incident to his employment but such unusual and extraordinary risks as he knows and comprehends. And the burden is on him to prove as part of his case that he did not know and comprehend the danger. *Brainard* v. *Van Dyke*, 71 Vt. 359. *Dunbar* v. *Central Vermont Railway*, 79 Vt. 474. *Hatch* v. *Reynolds*, 80 Vt. 294. *McDuffee* v. *Boston & Maine Railroad*, 81 Vt. 52. This affects the right of action, and does not relate merely to the matter of evidence or procedure. *Morrisette* v. *Canadian Pacific Railway*, 76 Vt. 267. The plaintiff introduced no evidence that he did not appreciate the danger of a piece of steel flying. On the contrary there was ample testimony that he fully realized this danger. He knew that "sometimes, in cutting, the men would hold a piece of board or a hat over the end or near the end to keep it from flying, so that the head of the rivet wouldn't hit us in the face." He testified: "It is the duty of the striker to keep his eye on the cutter, to hit. Otherwise, if the striker varies a little, he is liable to slip out on the edge of the cutter, clip the edge of the cutter." Again: "At twelve o'clock . . . I saw that the force of the blows I was giving [he was then swinging the sledge] on the head of the cutter was having its effect upon the head, — flattening it,

curling the edges over, spreading it out more than it was when I began. . . . I knew that if the sledge struck that edge and knocked off a piece, I couldn't tell in what direction that piece might fly. So far as I knew it might fly in my face, or in Olmstead's face." And again: "When I started in at one o'clock I picked up the tools from where I had laid them down. I had full view of that hammer and that cutter. As the cutting went along I could see the effect of some of the blows on the head of that cutter, not every one. . . . I knew after dinner that, as the head of the cutter flattened out, if the edge of the sledge should strike where it was flattened out, I would be liable to get a piece knocked off." There was further testimony of a similar kind by the plaintiff; and testimony from his fellow workmen that it was a common thing for chips or small pieces to fly from the head of a cutter after it had been flattened out. The plaintiff continued to use this cutter notwithstanding, as he said, "I knew that if I found a head which I thought ought not to be used or that in my opinion was unsafe to use, I could go to that bag and get a head out of it of my own volition." In the light of such evidence, it could not be said that the plaintiff sustained the burden of showing that he did not appreciate the danger of a piece of steel flying, and did not assume the risk by voluntarily continuing to expose himself to that danger after he comprehended it. *Carbine* v. *Bennington & Rutland Railroad*, 61 Vt. 348. *Skinner* v. *Central Vermont Railway*, 73 Vt. 336. *Johnson* v. *Boston & Maine Railroad*, 78 Vt. 344. And see *Cunningham* v. *Blake & Knowles Steam Pump Works*, 208 Mass. 68. The cases of *Jellow* v. *Fore River Ship Building Co.* 201 Mass. 464, and *Anderson* v. *Marrinan*, 202 Mass. 193, are plainly distinguishable from the present case on the facts.

*Exceptions overruled.*

The case was submitted on briefs.

*M. A. Cregg & H. A. Cregg*, for the plaintiff.

*H. F. Hurlburt & H. F. Hurlburt, Jr.*, for the defendant.