ARCHIE McPHAIL *vs.* BOSTON AND MAINE RAILROAD.

Middlesex. May 18, 1932. — July 2, 1932.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Negligence,* Employer's liability. *Practice, Civil,* Exceptions: whether error harmful.

At the trial of an action of tort by an employee against his employer, who was not insured under the workmen's compensation act, evidence, that the plaintiff, having been directed to get tools for expanding a tube in a boiler, made application for his tools at the defendant's tool room and was furnished with a set of tools which included the only prosser pin the defendant then had available for use in the work;

that such prosser pin was hardened too much at the end where, in the course of the expanding operation, it had to be struck with a hammer to be loosened; and that, when it was so struck by a fellow employee of the plaintiff, a small piece of steel flew off into the plaintiff's eye, warranted a verdict for the plaintiff on a count alleging in substance that the injury was caused by negligence of the defendant in furnishing to the plaintiff for his work a prosser pin made of hardened and brittle steel which was to be struck with a hammer.

Further evidence at such trial that the hammer furnished by the defendant to the plaintiff and his helper, and which they were using at the time of the accident, was frayed at the edges so that the risk of chipping was increased, warranted a finding of negligence of the defendant as alleged in a count setting up negligence in furnishing, for use in loosening the prosser pin, a hammer in "an unsuitable and defective condition in that the face of the said hammer was worn, roughened, frayed at the edges and improperly hardened. . . ."

Further evidence at the trial above described, that the prosser pin which was manufactured by the defendant was twelve-sided with twelve edges, not only at the part which went into the prosser but at the part that was required to be struck by the hammer in removing it, so that there was greater danger of chips flying if the pin was struck on the edges than if the surface had been rounded, warranted a finding that the prosser pin was of improper shape, and a verdict for the plaintiff on a count alleging as the negligence of the defendant causing the plaintiff's injury the fact that the prosser pin was in an unsuitable and dangerous condition to use because at the place where it had to be struck to loosen it there were sharp "corners and edges" thereby creating danger, when struck, from flying chips of steel.

TORT. Writ dated September 5, 1929.

In the Superior Court, the action was tried before *Brown,* J. Material evidence and exceptions saved by the defendant are stated in the opinion. There was a verdict for the plaintiff in the sum of $25,000, of which, by order of court, the plaintiff remitted all in excess of $15,000. The defendant alleged exceptions.

*J. M. Maloney,* (*M. J. Cohen* with him,) for the defendant.
*D. J. Lyne,* for the plaintiff.

CROSBY, J. This is an action at common law to recover for personal injuries sustained as a result of alleged negligence of the defendant. The declaration was originally in three counts; a fourth count later was added. At the close of the evidence the defendant filed a written motion for a directed verdict in its favor upon each count. The motion was allowed as to the third count, and denied as to

the first, second and fourth counts, subject to the defendant's exception. The defendant also excepted to the refusal of the trial judge to give certain instructions to the jury; some of those exceptions are now waived. Certain exceptions were saved to the charge.

The defendant was not insured under the workmen's compensation act. It is no defence that the plaintiff was negligent or had assumed the risk of injury. G. L. c. 152, § 66. *McGonigle* v. *O'Neill*, 240 Mass. 262. The only question raised by the denial of the motion for a directed verdict is whether there was evidence of negligence of the defendant as alleged in the counts submitted to the jury.

At the time the plaintiff was injured he was employed by the defendant as a boiler maker in its blacksmith shop in Billerica, and engaged "in expanding a tube to make a tight joint where the tube came through an upright called the boilersheet." The process of expanding the tube consisted of placing in its end a "prosser." This was composed of a bundle of twelve steel wedges bound together by a steel spring into a circular tool which fitted the inner surface of the tube at the point where it rested on the boiler sheet, and which had a larger diameter, or "flared, on each side of said point which caused a lip to be formed in the tube as the prosser was expanded by the prosser pin." The prosser pin was a twelve-sided steel tool about thirteen inches long and tapering from two and one half to one and one half inches in diameter, and fitted into the prosser. It had a shoulder three inches long and from one to two and one half inches in diameter. A compressed air gun fitted over this shoulder and the plaintiff, operating the air gun, drove the pin into the prosser as far as he could do so, thereby dilating it. The record recites that "Then the plaintiff's helper struck the prosser pin with an eight-pound two-faced steel hammer until he loosened it so that it could be taken from the prosser, when the operation was repeated until the joint was tight. This usually required the insertion of the prosser pin in the prosser four times for each joint. The number of blows required to loosen the prosser pin varied but would average from four to six."

The counts upon which the case was submitted to the jury allege in substance that the plaintiff, while in the defendant's employ, was injured by negligence of the defendant in failing to furnish him with safe and suitable tools to do his work. The plaintiff testified that on January 28, 1929, the day he was injured, he was instructed by his superiors to make some repairs on the boiler of an engine which consisted of expanding a tube; that he went to the tool room and asked for his tools, and was furnished with two prossers, a prosser pin, a hammer, a ninety-pound air gun and certain other tools; that his helper, one Connors, was with him; that Connors placed the prosser in the tube and the plaintiff put the gun in the tube and drove the prosser pin in with the gun; that then Connors struck the pin with a sledge hammer to knock it out, and when he did so a piece of steel flew from the pin and struck the plaintiff in the eye causing the injury for which he seeks to recover.

The first count alleges that the negligence of the defendant consisted in furnishing the plaintiff with a prosser pin to do his work made of hardened and brittle steel which was to be struck with a hammer. The second count alleges that the hammer furnished by the defendant to loosen the pin was in "an unsuitable and defective condition in that the face of the said hammer was worn, roughened, frayed at the edges and improperly hardened . . . ." The fourth count alleges that the prosser pin was in an unsuitable and dangerous condition to use because at the place where it had to be struck to loosen it there were sharp "corners and edges" thereby creating danger, when struck, from flying chips of steel.

The plaintiff testified that the pin in question had been used for about a year before the accident, he had used it frequently and subjected it to constant hammering, and at times it became so hot from such hammering that he had difficulty in handling it. There was evidence that this pin was the only one in use for that purpose in the defendant's shop; that the pins previously used were rounded at the top; that the pin furnished the plaintiff on the day of the

accident was the only one which would fit into the air gun; that the old type of pin was the usual type and the safest. A witness called by the plaintiff testified that he had been a boiler maker since 1900 and had worked for the defendant all his life except during the last ten years; that he was familiar with the work of knocking out pins; that the work was done with a small hammer with a ball face weighing six or eight pounds; that the pin was struck on the driving end; that the point of the pin that enters the extension tube is supposed to be hardened up to within seven or eight inches, and hard on the shank that fits into the air gun, and the part between those points where it is customary to hammer the pin to knock it out of the prosser should be softer or case hardened; that it is customary to test the pins from time to time to determine whether they had become glass hard rather than tough; that the effect of hitting a hardened surface of the pin with the head of a hammer would be that something would fly either from the hammer or from the pin. The evidence was to the effect that there are three degrees of hardness in steel — "glass-hard, tough-hard and soft"; that the manner of cooling determines its hardness. There was evidence that if steel is hit with a hammer one hundred fifty times a day for a whole year the hammering makes the steel hard in the place where it is struck; that the harder steel is the more brittle it is and chips are more apt to fly. If a pin becomes brittle it can be made "soft" or "tough-hard" by reheating and tempering.

From the foregoing and the other evidence it could have been found under the first count that the defendant was negligent in furnishing the plaintiff with a defective and unsuitable prosser pin to be used by him and that such use resulted in the injury which he sustained. The evidence shows that the tools which the plaintiff used were furnished him by application at the defendant's tool house where they were kept; that he was required to apply for the kind of tools he needed and they were furnished him by the defendant's servant in charge of the tool room whose duty it was to inspect the tools he passed out to the men.

It was the duty of the defendant to provide reasonably safe and suitable tools to the plaintiff with which to do his work. *Jellow* v. *Fore River Ship Building Co.* 201 Mass. 464. *Anderson* v. *Marrinan,* 202 Mass. 193. *Roberts* v. *Vroom,* 212 Mass. 168. *Lemieux* v. *Boston & Maine Railroad,* 219 Mass. 399. As the pin furnished by the defendant was the only one which would fit the air gun, it is plain that the plaintiff had no power of selection. The defendant admitted that it was not a common occurrence for chips to fly from pins of this kind while being used in a similar way. The plaintiff testified that he had never seen any man struck before by flying splinters of steel. This evidence would warrant the jury in finding that the pin was defective, in the sense that at the time it was not safe or suitable for the use to which it was put. *Coleman* v. *Mechanics' Iron Foundry Co.* 168 Mass. 254. The evidence warranted a finding that this pin was unsafe and dangerous to use because in its original manufacture by the defendant the part of it where blows were to be applied when in use was so hard and brittle that chips were more likely to fly from it when hammered than if this portion of the pin had been so tempered as to be less hard and brittle. It also could have been found that by constant and long continued use it had become more hardened than when originally manufactured. An expert called by the plaintiff testified that "if steel is hit with a hammer one hundred fifty times a day for a whole year the hammering makes the steel hard in the place where it is hammered; that the harder steel is the more brittle it is, the more apt to fly; that there is a fair likelihood that sparks will fly from a tool like this. . . ." In *Anderson* v. *Marrinan,* 202 Mass. 193, as in the present case, the plaintiff's eye was injured by a spark flying from the pin of a tube expander when he struck the tube with a hammer. In that case it was said at page 195: "The defendants, having engaged to provide suitable appliances, admitted that the expander furnished had been hardened, and the inference properly could have been drawn, that because of this condition it had been rendered brittle and unsuitable for the plaintiff's use."

The evidence that the hammer furnished by the defendant to the plaintiff and his helper, and which they were using at the time of the accident, was frayed at the edges and increased the risk of chipping warranted a finding of negligence of the defendant as alleged in the second count.

Evidence that the pin which was manufactured by the defendant was twelve-sided with twelve edges, not only at the part that goes into the prosser but at the part that was required to be struck by the hammer in removing it, warranted a finding that it was of improper shape. It could have been found that there was greater danger of chips flying if the pin was struck on the edges than if the surface had been rounded. It could not properly have been ruled that the defendant was not negligent in furnishing for the use of the plaintiff a tool so formed. It follows that the question whether the defendant was negligent as alleged in the fourth count was properly submitted to the jury.

It was admitted by the defendant that after the accident an examination of the pin showed that "There were indications of a small piece being chipped out of the pin." This evidence justified a finding that the steel chip which struck the plaintiff's eye came from the pin. It is plain that upon the evidence a finding was warranted that the pin and hammer furnished for the plaintiff's use in the performance of his work were defective and unsuitable; that the defect could have been discovered by reasonable inspection, and failure to make such inspection was evidence of negligence. *Holden* v. *Fitchburg Railroad*, 129 Mass. 268, 276, 278, 279. *Spicer* v. *South Boston Iron Co.* 138 Mass. 426. *Anderson* v. *Marrinan*, 202 Mass. 193. *Roberts* v. *Vroom*, 212 Mass. 168. In none of the three counts submitted to the jury could a verdict rightly have been directed for the defendant.

The defendant's requests numbered 14, 16, 17, 18 and 19 relate to the failure of the plaintiff to wear goggles at the time he was injured. He was instructed to wear them when he was engaged in the performance of dangerous work. He testified that he did not wear goggles at this time because "no spark had ever flown in his experience

while doing this work," and he did not think he needed them. There was no error in refusing to grant these requests in view of his testimony respecting the character of the work he was doing at the time he was hurt. Moreover, his failure to wear goggles did not affect the question of negligence of the defendant, which was the only issue involved in the trial. The exceptions, which the defendant has not argued, to the refusal of the judge to grant its requests for rulings need not be considered.

The defendant saved nine exceptions to the charge. The instructions to the jury made it plain that the sole issue to be determined was whether upon the evidence the defendant was negligent in failing to furnish the plaintiff with reasonably proper and suitable tools with which to perform his work in expanding the boiler tube. Whether what the judge said respecting the workmen's compensation act was in all respects strictly accurate need not be determined. It is plain that the rights of the defendant were not injuriously affected by the reference to the act. The instruction to the effect that in the enactment of the workmen's compensation act the Legislature sought to penalize all employers who did not accept its provisions should not have been given. We are of opinion, however, that so far as the defendant is concerned there was no prejudicial error. In referring to the act, the court, in the recent case of *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418, 421, said: "It was a humanitarian measure enacted in response to the conviction that previous remedies had failed to give the extent of relief to employees for personal injuries arising out of their employment demanded by modern conditions. Although the act was optional and not compulsory, its general tenor disclosed a legislative aim to secure its wide adoption and use. The interpretation of the act has been and ought to be, so far as reasonably practicable, to promote the accomplishment of its beneficent design."

The other exceptions to the charge raise substantially the same questions as are presented by the motion for a directed verdict, and in the requests for rulings, and need not be

considered in detail.   It is obvious that the parts of the charge excepted to were not erroneous.

As no reversible error appears in the conduct of the trial the entry must be

*Exceptions overruled.*