WILLIAM SKINNER, Admr. of LOREN H. CARPENTER'S ESTATE

*v.* CENTRAL VERMONT RAILWAY COMPANY.

May Term, 1901.

Present: TAFT, C. J., ROWELL, TYLER, START, WATSON and STAFFORD, JJ.

Opinion filed September 3, 1901.

*Master and servant—Assumption of risks of employment—Risks made incident by master's negligence—A servant assumes all ordinary risks incident to his employment, and if there are risks, made in-*

cident to his employment by his master's negligence, which the servant knows and comprehends, or ought to know and comprehend, he assumes these also, unless he is lulled into a sense of security by an express or implied representation of the master.

*Same—Assumption by brakeman of obvious and known risks*—A brakeman, 25 years old and of ordinary capacity and intelligence, was killed while in the defendant's employ, by falling from a freight train and being run over by a car in the course of the movements attending the switching of such car upon a spur track, and in an action against the defendant, brought by the next of kin, it was claimed that his fall and death were due to defects in the plan, grading and alignment of the spur track. It appearing, however, that the deceased, from his experience in the defendant's service at the spur in question, knew and comprehended, or ought to have known and comprehended, all the claimed defects and risks, a verdict should have been directed for the defendant.

ACTION on the case brought under V. S. 2452 for the benefit of the widow and next of kin of the plaintiff's intestate. Plea, the general issue. Trial by jury, Windsor County, June Term, 1900, *Munson*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

Upon the conclusion of the evidence the defendant moved for a verdict to be directed in its favor. This motion was overruled.

*Hunton & Stickney* and *William E. Johnson* for the plaintiff.

*C. W. Witters* for the defendant.

START, J. The action is case for the alleged negligence of the defendant, said to have caused the death of the plaintiff's intestate, and is brought under V. S., s. 2452, for the benefit of the widow and infant child of the deceased. It appears, that the intestate was a brakeman on the defendant's freight train; that, soon after the arrival of the train upon the main track in the Hartland yard, the locomotive and nine cars were detached

from the remainder of the train and run to the north part of the yard, where they were switched on to a side-track lying east of the main track, and backed down a considerable distance for the purpose of detatching the ninth car and flying it on to a spur track. While the cars were being so backed, the intestate was standing upon the top of the ninth car. The other brakeman, Strong, who was standing on the ground, had been instructed by the conductor to pull the pin and ride the ninth car on to the spur track. Whereupon, while the train was still backing down, Strong mounted the ladder on the north end of the ninth car, between the eighth and ninth cars, and told the intestate he would pull the pin and ride the car in, and the intestate said "All right." The intestate, who was then on the ninth car, stepped across to the eighth car. This occurred while the train was still backing. After it came to a stop, the train was put into a rapid forward motion, ten or fifteen miles an hour, in order to give the rear car, when it should be detached, sufficient headway to run on to the spur track. Strong pulled the pin and rode the car on to the spur track. The intestate fell backward from the rear end of the eighth car and was run over and killed by the ninth car, which was being switched on to the spur track. The negligence claimed consisted of defective construction of the side-track, in its plan, involving the necessity for a flying switch, the claim being that the spur track should have been continued so as to make another side track. It was also claimed that the track should have been level and not up grade toward the spur, and that the track was not aligned regularly, but was uneven, producing uneven motion, unsteadiness of the cars and insecurity to one standing on the top of the cars. The intestate was twenty-five years of age and of ordinary capacity and intelligence. He commenced work for the defendant December 15, 1898, in the capacity of spare brakeman and yard coupler.

As brakeman on the defendant's trains, between February 1, 1899, and August 21, 1899, the day of his death, he, as such brakeman, passed through the yard in question one hundred and fifty-three different days, making in all three hundred and seventy-three special trips over, or upon, the place of accident, and thirty-six times in, or upon, a train moving over the siding for the purpose of moving a car from, or to, the spur track. The trains upon which he was braking frequently took the siding in question for the purpose of allowing trains to pass on the main line; and he had just passed over the track in question while riding upon the top of the train, going in the opposite direction, for the purpose of making the flying switch.

From these facts, it is clear, that the deceased knew, or ought to have known, that the track leading from the siding was a spur and not a side-track; that the track was not level but uneven and up grade toward the spur; and that he knew, or ought to have known and comprehended, the effect that the grade and unevenness of the track had upon the motion of the cars, and the risk and danger attending the setting of cars upon the spur track by means of a flying switch. Under these circumstances, it is considered that the intestate assumed the risk attending the movement of cars over the siding and switching cars therefrom on to the spur by means of a flying switch, and that the defendant is not liable. The intestate's experience on and over the siding was such that he knew, or ought to have known, of the insufficiencies and neglect upon which the action is based, and the danger and risk incident to the business in which he was engaged. There was no latent defect in the track resulting in derailment, nor was the intestate lulled into any sense of security by any express or implied representations as to the safety of the track. It must have been obvious to one using this track for railroad purposes as the intestate did that the track was rough and irregular, and

that this would impart to the cars swaying and jolting motions; but this roughness did not impart any motion to the cars that the intestate was not bound to anticipate, and the risk of which he did not assume. A servant assumes all ordinary risks incident to his employment. By entering upon, and continuing in, the service, he is presumed to take upon himself its natural and ordinary risks and perils. He, also, in like manner, assumes risks and dangers attending his service that are known to, and comprehended by, him, in so far as they would have been known and comprehended by one of his age, experience and capacity. If a servant, knowing that the master has neglected his duty and that he is thereby subject to dangers not incident to the employment, continues in the service, the increased danger becomes an incident of the service which he assumes, and, for an injury resulting therefrom, the master is not liable. By continuing in the service, he assumes the hazard incident to obvious and known dangers, unless he is lulled into a sense of security by an express or implied representation of the master.

Thus, in *Dumas* v. *Stone,* 65 Vt. 442, it is said, "The servant assumes the usual and ordinary risks incident to the business in which he is engaged; but he does not assume the unusual and extraordinary risks thereof, unless they are, or ought to have been, known to, and comprehended by, him, in which case he assumes these also, whatever they are." In *Carbine's Admr.* v. *Bennington & Rutland R. R. Co.,* 61 Vt. 348, the plaintiff's intestate was killed by being knocked from the top of a coal car by the arch of a bridge on the defendant's railroad. It was claimed that the bridge was improperly constructed, in that it was too low; but it appeared that the intestate had served on the defendant's road as brakeman for several months and passed daily through the bridge. It was held that a servant, who, having notice of a defective appliance,

knowingly continues in the employment, thereby ordinarily assumes the increased danger as an incident of the service, and that the master is not liable for an injury resulting therefrom. In *Williamson's Admr.* v. *Sheldon Marble Co.,* 66 Vt. 427, where the claimed insufficiency in the place furnished by the defendant for the plaintiff's intestate to do certain work was apparent to ordinary observation, the trial court ordered a verdict for the defendant; and this court, holding that the intestate assumed the risk, affirmed the judgment.    In *Latremouille, Admr.,* v. *Bennington & Rutland R. R. Co.,* 63 Vt. 336, the neglect complained of was that the defendant did not furnish the deceased a safe place to work, and did not employ and furnish competent and sufficient fellow servants to assist him in his work; and it was held that the danger to which the deceased exposed himself was known and obvious, and that a verdict should have been directed for the defendant.

It is considered that these holdings, if followed, are controlling in this case, and that there is no good reason for departing from them.    It is, therefore, held that there was error in overruling the defendant's motion for a verdict.

*The plaintiff having consented that final judgment may be rendered in this court, if the ruling of the court below is found erroneous, judgment is reversed, and judgment rendered for the defendant to recover its costs.*