H. L. DAILEY *v.* SWIFT & COMPANY.

Special Term at Brattleboro, February, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 7, 1912.

*Master and Servant—Injuries to Servant—Questions for Jury— Assumption of Risk—Assurance of Foreman—Effect—Proximate Cause—Evidence—Admissibility.*

A master is bound to exercise due care to provide his servant a reasonably safe working place, unless the servant voluntarily assumes the risk of its unsafety.

In a servant's action for injuries from falling off a platform whereon he was working, whether the platform without a guard railing was a reasonably safe working place, and, if not, whether that was owing to defendant's negligence, *held* questions for the jury.

A servant who *voluntarily* undertakes to work under dangerous conditions that he fully knows and comprehends, or ought to, assumes the risk of injury therefrom.

To bring a servant within the principle expressed by the maxim *volenti non fit injuria*, and charge him with the assumption of an extraordinary risk that he fully knows and comprehends, he must *voluntarily* undertake it, and so a servant engaged to ice cars from a high platform without a guard railing, the dangers incident to the lack whereof he fully knew and comprehended, did not, as matter of law, by undertaking the work assume the risk incident to the lack of the railing, where, before he began work and upon his objection to working in that place, the master's foreman told the servant not to mind the platform, and that "if anything happens to you up there, it will be made all right"; for that assurance tends to explain the servant's conduct and to rebut the inference that he voluntarily incurred the risk.

The word "from" used in a contract and referring to place, may be either exclusive or inclusive, according to the context, and so it was a question for the jury whether an assurance that, "if anything happens to you up there, it will be made all right," given to a servant orally hired "to ice cars from an icehouse" that consisted of a house and high platform, extended to the icing of cars with ice that was piled outside of the icehouse, but which was brought to the platform, the same as that from the icehouse, to be thence loaded into the cars.

Where a master negligently failed to provide a guard railing for a platform whence servants iced railroad cars, and the honeycomb condition of a cake of ice that a servant was handling on the platform caused him to slip and fall therefrom, whether the master's negligence in failing to provide a guard railing was the proximate cause of the accident was a question for the jury.

In a servant's action for injuries resulting from a fall from a platform and claimed to have been caused by defendant's negligence in failing to provide a guard railing thereto, plaintiff's offered evidence

that shortly after he was hurt, defendant, saying it was a careless place and a guard rail ought to be put up, ordered the platform to be protected by a guard rail, which was done, was properly excluded.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1911, Orleans County, *Butler,* J. presiding. Verdict directed for the defendant, and judgment thereon. The plaintiff excepted. The opinion states the case.

*Grout & Grout* for the plaintiff.

*Clarke C. Fitts* and *Hermon E. Eddy* for the defendant.

WATSON, J. The undisputed evidence shows the facts of this case as stated herein. When the plaintiff engaged to work for the defendant, the contract of employment, made with the defendant's foreman and manager, was to ice cars from the defendant's icehouse in Derby, at an agreed price per week, and the plaintiff was to work as long as both parties were satisfied. After the plaintiff had talked over with the defendant the terms of his employment, and before he began work, he told defendant's foreman and manager, who was hiring him, that he had seen the icing work he was to do, done on the platform of the icehouse where he was to do his work, and that he regarded it as a careless place to work, unless a train of cars stood in front of the platform, and that he hesitated about taking the employment; whereupon the foreman and manager told the plaintiff, "You never mind the platform, if anything happens to you up there it will be made all right."

Under this employment without change in the contract, and relying upon the said assurance of the foreman and manager, the plaintiff worked henceforth until he received the injury for which he now seeks to recover, a period of eighteen years. Within the time of his so working no change, material here, was made in the platform. It remained, as it was when the plaintiff entered into his engagement, without any guard or railing on its east side to obviate or lessen the danger of a servant's falling off, in case of accident, when engaged thereon in such work. Unless the plaintiff voluntarily assumed the risk consequent on the known condition of the platform, as a working place, the de-

fendant was in duty bound to exercise reasonable care and prudence to provide a reasonably safe place for him to perform his work. On the evidence, whether the platform, without any guard or railing on its east side to prevent a servant from falling off, when performing such work, was a reasonably safe place for that purpose, and, if not, whether this was due to defendant's negligence, were questions for the jury. *Vaillancourt* v. *Grand Trunk Ry. Co.*, 82 Vt. 416, 74 Atl. 99; *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489, 74 Atl. 108, 24 L. R. A. (N. S.) 128.

No claim is made by the plaintiff, nor could there well be in the circumstances of this case, that he did not, when entering into his employment and ever thereafter to the time of the accident, have full knowledge of, and appreciate, the dangers incident to the structural condition of the platform, in the respect named. It was held in *Fraser* v. *Blanchard,* 83 Vt. 136, 73 Atl. 995, 75 Atl. 797, that if the conditions are constant and of long standing, and the danger one suggested by the common knowledge of all, and both the conditions and dangers are obvious to the common understanding, the servant of full age, intelligent, and of adequate experience, and these elements appear without contradiction, the question of the assumption of risk becomes one of law for the court, referring to *Butler* v. *Frazee,* 211 U. S. 459, 53 L. ed. 281, 29 Sup. Ct. 136. The rule thus stated, however, presupposes that the undertaking was voluntarily entered upon by the servant. Whereas in the case at bar that is a subject of contention. Where this element is involved, the rule is well settled, as stated by the Supreme Court of the United States in the case last named: "One who understands and appreciates the permanent conditions of machinery, premises, and the like, and the danger which arises therefrom, or, by the reasonable use of his senses, having in view his age, intelligence, and experience, ought to have understood and appreciated them, and voluntarily undertakes to work under those conditions and to expose himself to those dangers, cannot recover against his employer for the resulting injury. Upon that state of facts the law declares that he assumes the risk."

Since the plaintiff, as before seen, entered into his contract with full knowledge of the condition of the platform, and appreciating the dangers attending the performance of his duties thereon, the important, and perhaps the sole, question in this branch of the case is, Did he *voluntarily* encounter the risk,

within the meaning of the maxim, *volenti non fit injuria? Kilpatrick* v. *Grand Trunk Ry. Co.*, 74 Vt. 288, 52 Atl. 531, 93 Am. St. Rep. 887; *Drown* v. *New England Tel. & Tel. Co.*, 80 Vt. 1, 66 Atl. 801; *Duggan* v. *Heaphy*, 85 Vt. 515, 83 Atl. 726.

The defendant contends that if the condition of the platform is to be treated as the proximate cause of the injury,—a question hereinafter considered,—the plaintiff assumed the risk, under the general rule that an employee assumes the ordinary risks incident to his employment, and such extraordinary risks as he knows and comprehends, or are so plainly observable that he will be taken to have known and comprehended them; while the plaintiff, asserting to the contrary, contends that by reason of the assurance made to him by the defendant's foreman and manager at the time the contract of employment was made, and of the plaintiff's entering upon, and continuing in, the performance of the contract relying upon such assurance, he did not in law voluntarily take upon himself the risk, and hence the general rule stated does not apply.

Exceptions to this general rule are not infrequent. The law is well established that where a defect occurs during the servant's employment, and on complaint made by him the master promises to repair the defect, and thereby induces the servant to continue in the employment, the latter may recover for injuries received within a reasonable time following, unless the danger is so imminent that no reasonably prudent man would continue in the service. The effect of the promise is to relieve the servant from the assumption of the risk during such reasonable time. The case of *Harris* v. *Bottom,* 84 Vt. 27, 77 Atl. 945, is of this sort. See also *Carbine's Admr.* v. *Bennington & Rutland R. R. Co.*, 61 Vt. 348, 17 Atl. 491. In *Morden Frog and Crossing Works* v. *Fries,* 228 Ill. 246, 81 N. E. 862, 119 Am. St. Rep. 428, it was held that to the general rule that the servant assumes all of the ordinary hazards arising from the performance of the duties of his voluntary engagement, the law creates an exception or modification where the servant, after acquiring knowledge of a defect, gives notice thereof to the master, and the latter promises to remedy the defect; that the effect of the promise is to relieve the servant from assumption of risk for a reasonable time thereafter; that the servant may continue in the performance of his duties for a reasonable time, unless the danger is so imminent that no prudent person would encounter it. "By the promise

a new relation is created, whereby the master impliedly agrees that the servant shall not be held to have assumed the risk for a reasonable time following the promise." In *Holmes* v. *Clarke,* 6 H. & N. 349, Chief Baron Pollock, delivering the opinion of the court of exchequer, said in such circumstances, "it must be considered that the master takes upon himself the responsibility of any accident that may occur during that period." To the same effect are *Eureka Co.* v. *Bass,* 81 Ala. 200, 8 South. 216, 60 Am. Rep. 152; *Greene* v. *Minneapolis & St. Louis Ry. Co.,* 31 Minn. 248, 47 Am. Rep. 785, 17 S. W. 378; *Hough* v. *Texas and Pacific R. R. Co.,* 100 U. S. 213, 25 L. ed. 612; *Yerkes* v. *Northern Pacific Ry. Co.,* 112 Wis. 184, 88 N. W. 33, 88 Am. St. Rep. 961; *Rice* v. *Eureka Paper Co.,* 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585; *Fox* v. *Kinnear etc. Co.,* 75 N. J. L. 716, 67 Atl. 1011. In *Counsell* v. *Hall,* 145 Mass. 468, 14 N. E. 530, it was held that the promise was a circumstance to be considered by the jury in determining whether the servant assumed the risk in the meantime, and whether he was using due care in working when he knew there was danger; the court, by Holmes, J., saying, "But no case, we believe, has gone the length of deciding that the promise entitles the servant to recover as matter of law, which was the effect of the ruling asked." In *Dunkerley* v. *Webendorfer Mach. Co.,* 71 N. J. L. 60, 58 Atl. 94, it was held that the master is not exculpated from its negligence in the first instance, unless the willingness of the servant to incur the risk is shown or reasonably inferred from the circumstances of the case; that such willingness is not shown, nor is it reasonably inferred from knowledge of the danger by the servant, where the other circumstances negative such inference; that the circumstances that the servant complains, receives a promise of repair, and continues to work in reliance upon the promise, negative the inference of willingness on his part to exempt the master from liability; that by making the promise the master relieves the servant from the assumption of risk, and remains liable for his negligence, notwithstanding the servant's knowledge; and that the right of recovery does not rest upon the promise, but upon the master's negligence, and the fact that the application of the principle expressed in the maxim, *volenti non fit injuria,* is negatived by the servant's reliance upon the promise.

Of a somewhat different class, and in facts more like the case in hand, is *Blanchard* v. *Vermont Shade Roller Co.,* 84 Vt.

442, 79 Atl. 911. There the plaintiff was injured while at work in an elevator pit throwing rubbish therefrom, with full knowledge of the risks ordinarily attending this work. The plaintiff testified that he was doing the work by direction of the superintendent, and in his presence; that when he entered the pit the elevator was standing at the first floor above, the bottom being even with the floor; that when the superintendent sent the elevator up to this point, some third person present advised putting slats under the elevator to keep it from coming down. Whereupon the superintendent told the plaintiff that he was going to be there, and would look out for him. While the plaintiff was thus at work in the pit the superintendent let the elevator go up, and when the space was open a truck went down by the careless handling of a fellow servant, injuring the plaintiff. It was held that the evidence tended to show that the plaintiff was doing the work in reliance upon an undertaking of the superintendent to protect him in respect to the operation of the elevator; and that a finding of this fact, if unaffected by other considerations, would relieve the plaintiff's conduct of the effect it would otherwise have as an assumption of the risk attending the ordinary use of the elevator.

Some English cases well illustrate the contrast between mere knowledge by the servant of the risk of danger, and assent by him to encounter it, and are much in point. In *Thomas* v. *Quartermaine,* 18 Q. B. D. 685, the plaintiff was employed in that part of defendant's brewery where a boiling and a cooling vat were placed, with a passage, in some places not more than three feet wide, running between them, the cooling vat having a rim rising sixteen inches above the passage. The plaintiff went along this passage to get from under the boiling vat a board used as a lid. As the lid stuck, he gave an extra pull, when it came away suddenly, and he, falling back into the cooling vat, was severely scalded. The trial judge, holding that there was evidence of a defect in the condition of the works in there being no sufficient fence to the cooling vat, found that the condition was known to both the plaintiff and the defendant, that the plaintiff had not been guilty of contributory negligence, and gave judgment in his favor. In the Court of Appeal, Bowen, L. J., discussing the law involved in the maxim, *volenti non fit injuria,* said it was no doubt true that the knowledge on the part of the injured person which would prevent him from alleging negligence

against the occupier of premises must be a knowledge under such circumstances as leads necessarily to the conclusion that the whole risk was voluntarily incurred; that mere knowledge may not be a conclusive defence; that there may be a perception of the existence of the danger without comprehension of the risk; and "there may again be concurrent facts which justify the inquiry whether the risk though known was really encountered voluntarily." Holding that the doctrine of *volenti non fit injuria* applied, the learned judge said, "But when it is a knowledge under circumstances that leave no inference open but one, viz., that the risk has been voluntarily encountered, the defence seems to me complete." Accordingly the recovery by the plaintiff was disallowed. In *Yarmouth* v. *France*, 19 Q. B. D. 647, 17 Eng. Rul. Cas. 217, the plaintiff was in the employ of the defendant, a wharfinger and for the purpose of his business the owner of carts or trolleys and horses. Amongst these was a horse which the plaintiff found to be vicious,—a kicker and a jibber,—and altogether dangerous and unfit to be driven. The plaintiff objected to drive him, and told the foreman of the stable that the horse was unsafe to drive; whereupon the foreman said: "You have to drive him; and if any accident happens, we (meaning the employer) will be responsible." The plaintiff continued to drive the horse, and while so doing, sitting on a part of the trolley said to be usual and not improper for the driver to sit, the horse kicked and broke the plaintiff's leg; for which injury he sought to recover damages in that action. The judge of the trial court, acting upon what he considered the effect of the decision in *Thomas* v. *Quartermaine*, held when it was proved that the plaintiff knew the horse to be vicious, but continued to drive him, that this alone disentitled him to recover, upon the application of the maxim of *volenti non fit injuria.* Lord Esher, M. R., said, that whether this maxim goes to the length, that the mere fact of the workman knowing that a thing is dangerous, and yet using it, is conclusive to show that he voluntarily incurred the risk, depended upon whether or not *Thomas* v. *Quartermaine* had so decided; that taking the whole of that judgment together, it seemed to amount to this: that mere knowledge of the danger will not do; there must be an assent on the part of the workman to accept the risk, with a full appreciation of its extent, to bring him within the maxim; that the trial judge "did not bring his mind to bear upon the motives which induced the

plaintiff to act as he did,—whether he relied upon the foreman's statement that the employer would be responsible in case of an accident, or whether he was influenced by the fear of being thrown out of employ if he disobeyed the foreman's orders. All that was for the jury; and the judge ought to have applied his mind to it;'' and that he saw nothing in *Thomas* v. *Quartermaine* to prevent a recovery by the plaintiff, unless the circumstances were such as to warrant a jury in coming to the conclusion that he freely and voluntarily, with full knowledge of the nature and extent of the risk he ran, impliedly agreed to incur it.

With this, Lindley, L. J., concurred, saying the case differed from the one last mentioned: in that case there was evidence that the plaintiff was *volens*, and not merely *sciens;* he did the act voluntarily, of his own accord; there was no evidence that the plaintiff was *nolens;* while in the case in hand, the horse was vicious, of which the plaintiff constantly complained to the defendant's foreman and was told to go on driving it, and the plaintiff did so rather than run the risk of a dismissal; that in the circumstances of the case, the question was, whether the plaintiff, with knowledge and appreciation of both the risk and danger, voluntarily took the risk upon himself; that the conversation with the foreman, though not evidence against the defendant of any promise by him to take the risk, was admissible to explain the conduct of the plaintiff, and to rebut the inference that he voluntarily took the risk upon himself; that the jury might properly come to such a conclusion if it was proved that the workman was told by the foreman not to mind, and that if any accident happened the employer must make it good—such an additional circumstance would go far to negative the inference that the complaining workman took the risk upon himself.

*Smith* v. *Baker* (H. L.), 1891, A. C. 325, was determined upon the same principles. The only objection raised to the plaintiff's right to recover was, that he had voluntarily undertaken the risk. In answer to a special question, the jury found otherwise. Lord Watson said the only question their Lordships were called upon to decide was, whether upon the evidence, the jury were warranted in finding as they did in this respect; that the point to be determined practically resolved itself into the question whether the plaintiff voluntarily undertook the risk; that if, upon that point, there were considerations pro and

contra, requiring to be weighed and balanced, the verdict of the jury could not be lightly set aside; and that the question which has most frequently to be considered is not whether the servant voluntarily and rashly exposed himself to injury, but whether he agreed that, if injury should befall him, the risk was to be his and not his master's. The plaintiff was allowed to recover.

On the foregoing authorities, there should seem to be no doubt that the assurance of the defendant's foreman and manager to the plaintiff at the time the contract was made, is evidence of much weight relevant to the question whether the latter voluntarily incurred the risk incident to his work on the platform, and that this question, on all the evidence, was for the jury to determine.

It is said by the defendant, however, that since the plaintiff's contract of employment was "to ice cars from the icehouse," the said assurance had no relation to the handling of ice piled outside of the icehouse. But this cannot be so ruled as a matter of law. In addition to the ice put into the icehouse, for two or three years next before the time of the accident the defendant piled ice outside of the icehouse at and against the south end of it, to be used for the same purpose. In the year 1910, four thousand cakes, 22 x 44 x 12 inches in size, were so piled. During the time when ice was thus piled outside, the plaintiff took part, with the other employees of the defendant, in digging it from the pile, in handling it, and in using it, icing cars. From whichever place the ice was taken, it came to the platform on the west side of it, was handled the same on the platform, and cars were iced with it in the same manner. The platform to all intents and purposes, if not in fact, is a part of the icehouse itself. In this connection it should be had in mind that the top of the cars when standing on the track in front of the platform to be iced, is on a level with the floor of the platform, and the cars are iced by dropping the broken ice into the icebox through an opening in the top of the cars, and in the process of the work the ice is passed immediately from the platform to the iceboxes in the cars. Did the word "from," as used in the contract, "to ice cars from the icehouse," have reference to the place where the ice was kept for use, or did it rather have reference to the place from which the icing was to be done? Do the context, and the circumstances in the light of which the contract is to be construed, show the intention of the parties to

contract exclusively with reference to the use of ice, put into the icehouse when gathered, or inclusively with reference to the use of this and any other ice supplied there by the defendant for such icing purposes? Mr. Bouvier says, that wherever the word "from" is used with respect to place, it is said to be taken inclusively according to the subject-matter; that the rule has not been unvarying, and many courts have not hesitated to follow the views of Lord Mansfield in Cowper, 714, "that it is either exclusive or inclusive according to context and subject-matter, and the court will construe it to effectuate the intent of parties and not to destroy it." Bouvier's Law Dict. "It may be either inclusive or exclusive according to the context." Stroud's Judicial Dict. And as the scope of the plaintiff's employment necessarily depended on circumstances, it is a question for a jury whether or not icing cars with ice piled outside the icehouse, as he was doing at the time of the accident, was within the scope of his employment. *Schimpf* v. *Harris*, 185 Pa. 46, 39 Atl. 820; *Simmons* v. *Pennsylvania R. Co.*, 199 Pa. 232, 48 Atl. 1070; *Moon* v. *Mathews*, 227 Pa. 488, 76 Atl. 219, 136 Am. St. Rep. 902, 29 L. R. A. (N. S.) 856.

It is further said that the evidence of this assurance is immaterial, because the declaration contains no allegation covering that situation. This evidence was admitted over defendant's objection, the ground of the objection not appearing, and an exception saved. But the defendant's exceptions are not here, and this piece of evidence is a part of the case before us on the plaintiff's exception to the granting of defendant's motion for a verdict. Whether an amendment to the declaration is necessary to bring this element into the pleadings, is a question not before us.

It is contended that the proximate cause of the accident was the honeycomb condition of the cake of ice then being handled, and not the want of a guard or railing on the east side of the platform. The first count of the declaration is based upon the neglect of the defendant to provide a reasonably safe place for the plaintiff to perform his work; and from what we have already said, it is seen that unless the plaintiff voluntarily incurred the risk attending his work on the platform in the condition in which he knew it to be, and appreciating the danger, at the time he entered upon the employment, the defendant was bound to exercise the requisite degree of care to make and maintain the platform

in a reasonably safe condition as a working place for the plaintiff in the performance of his duties. If such degree of care in this respect required the defendant to have a suitable guard or railing on the east side thereof, and the defendant neglected so to do, such negligence is the proximate cause of the natural and probable consequences of it. Whether the result of which complaint is made in this case was the natural and probable consequence of it, is a question for the jury. *Morrisette* v. *Canadian Pacific R. R. Co.*, 74 Vt. 232, 52 Atl. 520; *Corbin* v. *Grand Trunk Ry. Co.*, 78 Vt. 458, 63 Atl. 138; *Place* v. *Grand Trunk Ry. Co.*, 80 Vt. 196, 67 Atl. 545.

What is known as the "Partridge Case," *Hilas Grow* v. *Town of Corinth,* heard and decided by this Court, in Orange County, in March, 1881, though never reported, seems to have involved much the same principle, in this respect, as the case now before us. There, when the plaintiff, a traveller, was passing over a public highway in the defendant town, driving a pair of horses, his horses took fright at the noise made by the flying up of a partridge in the bushes on the upper side of the travelled road, but within the limits of the highway, became unmanageable, and without fault on his part ran off the bank on the lower side of the road, whereby the plaintiff was injured. There was no guard or railing on that side of the road where the team went off. On the facts found by a referee, the town contended that the proximate cause of the injury was the flying up of the partridge, and not the want of a guard or railing on the side of the road, and therefore it was not liable.

It was held, Chief Judge Pierpoint orally delivering the opinion of the court, that a suitable guard or railing on the side of the road at the place in question would have prevented the accident, and consequently the want of such guard or railing was the proximate cause of the injury, and the town was responsible.

There was no error in excluding the evidence offered by the plaintiff to show that the day he was hurt or the next day, the defendant ordered a guard put up along the east side of the platform, to protect anyone working on the platform from falling off and being injured, the defendant saying it was a careless place and a guard ought to be put up; that a guard was then put up and kept there during the season of 1910. Whether the declaration of the defendant included in the offer would be admissible, standing alone, we do not consider; for the evidence

offered with it of the subsequent alteration of the platform was incompetent to show negligence in its original construction. *Place* v. *Grand Trunk Ry. Co.*, 82 Vt. 42, 71 Atl. 836; *Columbia & Puget Sound R. Co.* v. *Hawthorne*, 144 U. S. 302, 36 L. ed. 405, 12 Sup. Ct. 591.

*Judgment reversed and cause remanded.*