HERBERT L. DAILEY *v.* SWIFT AND COMPANY.

November Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed February 4, 1916.

*Master and Servant—Injury to Servant—Law of the Case—*
*Proof—Variance—Amendments in Supreme Court—Evi-*
*dence.*

In a servant's action for injuries received while working on the platform of an icehouse, judgment on a directed verdict for defendant was reversed, and the basis of liability held to be an agreement that, if plaintiff should be injured while working on the platform without a guard, he should be compensated. Upon a second trial it appeared that this agreement was made when plaintiff was first hired, many years before the accident, and that at the time he was injured he was working under an agreement that, if he should be injured on the platform, he should be compensated. *Held* that, although the second agreement was much broader than the first and included all accidents, yet, as the second agreement covered the assumption of risk arising from the want of a railing, the decision on review after the first trial was the law of the case applicable to the second trial.

There is a material variance between the allegation that the defect in a servant's working place causing the accident complained of was unknown to him, and proof that he consented to work there under an agreement that he should be compensated if injured; but in such a case, where the evidence was received and the matter fully litigated, this Court may on review, in its discretion, allow the declaration to be amended to correspond with the proof.

In a servant's action for injuries, where he relied on an agreement that he should be compensated if injured, for the purpose of explaining this agreement plaintiff was properly allowed to show a previous agreement made with defendant's predecessor in interest.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1913, Orleans County, *Waterman,* J., presiding. Verdict and judgment for the plaintiff. The

defendant excepted. The opinion states the case. This case has been once before in this Court. See 86 Vt. 189.

*Clarke C. Fitts* and *Hermon E. Eddy* for the defendant.

*Young & Young* and *Grout & Grout* for the plaintiff.

MUNSON, J. This case was disposed of on the first trial by directing a verdict for the defendant, and the judgment then rendered was reversed by this Court. 86 Vt. 189. The case is now here on exceptions to a judgment obtained by the plaintiff and to various rulings made on the trial.

The defendant does not question that the decision rendered by this Court on the first trial remains the law of the case until it is finally disposed of. Its claim is that the evidence given on the second trial differs substantially from that given on the first; so that the case as now presented is not within the former decision of the Court, nor within the authorities then relied upon.

The evidence to be examined and compared in disposing of this claim is that tending to prove a promise of the defendant which is relied upon to show that the plaintiff did not voluntarily assume certain known risks attending his work on a platform from which cars were supplied with ice. The defendant contends that the complaint and assurance shown in the first trial were confined to the want of a railing, while the evidence in the second trial relates to a general objection and undertaking; that the former decision is to be interpreted and measured by the case as then presented and the authorities cited in support of it; and that the doctrine relied upon, as uniformly applied, extends only to promises based on some specific complaint.

The transcript of the former trial is not among the papers submitted, and we turn to the opinion for a statement of the complaint and undertaking as then presented. The opinion states that the plaintiff was hired by the defendant's foreman and manager to ice cars from the defendant's ice house; that after talking over the terms of his employment, and before beginning work, plaintiff told the manager that he had seen the work done on the platform where he was to work, "and that he regarded it as a careless place to work, unless a train of cars stood in front of the platform, and that he hesitated about tak-

ing the employment," and that the manager thereupon said: "You never mind the platform, if anything happens to you up there it will be made all right;" that while the plaintiff worked there the platform remained as it was, "without any guard or railing on its east side to obviate or lessen the danger of a servant's falling off, in case of accident, when engaged thereon in such work."

In developing the questions in the case, it was said that unless the plaintiff voluntarily assumed the risk consequent on the known condition of the platform the defendant was bound to exercise reasonable care to make the place reasonably safe for the work; that on the evidence presented it was for the jury to determine, "whether the platform, without any guard or railing on its east side to prevent a servant from falling off, when performing such work, was a reasonably safe place for that purpose, and, if not, whether this was due to defendant's negligence;" that inasmuch as the plaintiff did not claim but that he had full knowledge and appreciation of the dangers incident to the structural condition of the platform in the respect named, the important, and perhaps the sole, question in this branch of the case was, "Did he *voluntarily* encounter the risk, within the meaning of the maxim, *volenti non fit injuria.*"

It now appears that the plaintiff was first hired for this work by a foreman named Benjamin, and worked under this engagement about twelve years, and that after leaving the employment for a time he was hired again by a foreman named Pinney, and then continued to work until the accident, which occurred about six years later. On the first trial the plaintiff testified regarding the first hiring only, no reference being made during the trial to a second engagement. On the second trial, the plaintiff's testimony regarding the first hiring was offered and received because of a reference made to that hiring in reaching the later agreement with Pinney.

The transcript of the testimony given by the plaintiff on the second trial contains the only evidence we have of a complaint and undertaking. The substance of his testimony in direct examination regarding the first hiring was, that he said to Benjamin that it looked dangerous up there on the platform without any railing or any cars there, and that Benjamin said, "Never mind that; go ahead, and if anything happens to you, you will be taken care of." As to the second hiring, he testified

that when Pinney asked him to go back he told him the platform was a dangerous place and he had got tired of it, but finally said he would go back if he could have his old job the same as he had it before; that Pinney asked what that was, and he told him that if anything happened to him on the platform he was to be taken care of, and that Pinney said, "That is all right; if that is all, go to work." In cross-examination plaintiff testified that his understanding from the first agreement was that if he should fall off there by reason of there being no protection the company would take care of him; that both contracts were the same, and that there never was an understanding that a rail should be put there. On being asked to state in his own way the talk with Pinney, he gave it substantially the same as in direct examination, except in omitting his reference to the platform as a dangerous place; and then said in reply to specific inquiries that there was no talk with Pinney about the danger of falling off the platform; that he understood he was to be taken care of if he got hurt in any manner while at work on the platform,—if a plank broke and he fell through, or if he slipped on the platform by reason of its being icy; but that if ice fell against him there that would not be the fault of the platform.

In its charge the court referred to the plaintiff's evidence as tending to show that at the time he entered the defendant's employment the defendant's foreman told him in substance that if anything happened to him up there—meaning on the platform—it would be made all right, or that he would be taken care of. The following special inquiry was submitted to the jury and received an affirmative reply: "Did the defendant's foreman agree with the plaintiff that in case the plaintiff was injured while working on the platform, he would be taken care of as claimed by the plaintiff?"

So it appears that the case was submitted to the jury, and was disposed of by them, on the theory that the promise of the defendant was a general assurance against any injury received in doing his work on the platform by reason of its unsafe condition; and that this was in accordance with the evidence and claim of the plaintiff. But the opinion disposing of the case as first tried puts it upon the ground of an assurance against the danger resulting from the want of a railing, and its statement of the conclusion of the Court is as follows: There seems to be no doubt "that the assurance of the defendant's foreman and

manager to the plaintiff at the time the contract was made, is evidence of much weight relevant to the question whether the latter voluntarily incurred the risk incident to his work on the platform, and that this question, on all the evidence, was for the jury to determine.'' The question is whether the change in the evidence presents a material difference as regards the application of the rule concerning the voluntary assumption of risks.

It is clear that the risk arising from the want of a railing is covered by the broader assurance testified to on the second trial. But the defendant contends that the unlimited character of the undertaking as then presented renders it ineffective as evidence of the nonassumption of the particular risk complained of. It is claimed that an undertaking which does not refer to any specific defect is not within the terms or reason of the rule relied upon. The argument is, that when the established rule is complied with the master has his attention directed to the particular defect and danger, and is thus given an opportunity to relieve himself from the additional liability by undertaking to make the required repair; and that the servant's relief from the assumption of the risk arises from the fact of this undertaking, and continues only for such time as may reasonably be allowed for making the repair.

The defendant asserts that the decisions cited in support of our previous judgment determine nothing in advance of the proposition above stated, and so are not authorities for the plaintiff upon the case now presented. But the fundamental requirement of the rule as stated is no more wanting in the present case than it was in the case as first tried. The promise as presented in the evidence of both trials was, not to make a repair, but to compensate the plaintiff for any injury he might sustain from the want of it. The complaint, whether general or special, is nothing unless followed by an undertaking. To sustain the defendant's claim, the difference in the undertaking must be one having a material bearing upon the question of voluntary assumption.

It must doubtless be considered that the present case as determined by the findings of the jury differs in its facts from the case previously decided. But we think the change in the facts is not such as to take the case out of the principle of the former decision. The plaintiff's injury was due to a defect which was existing and obvious at the time of the agreement,

and which had continued without interruption from the time of the agreement to the time of the accident. The risk arising from the want of a railing, although not mentioned in terms, was covered by the undertaking as now shown. The undertaking in this case, as in the last, was a promise to compensate, and this promise is to be considered with reference to its operation as an inducement to the plaintiff. It must be said upon the case as now presented, as was said in disposing of the case as previously tried, that the plaintiff's testimony was evidence tending to show that he did not voluntarily assume the risk of working on the platform without the protection of a railing.

The defendant contends that its motion for a verdict should have been granted on the ground that the evidence did not support the declaration. The counts relied upon proceed upon the ground that the defect was unknown to the plaintiff; while the evidence shows that he knew of it, and appreciated the danger attending it, and required a promise of compensation if damage resulted. It is true that a recovery, either on the case shown by the allegations, or on that shown by the proof, would be on the ground that the plaintiff did not voluntarily incur the risk. But incurring a risk through ignorance of its existence, and accepting a known risk on a promise of compensation are different matters, and a claim on either ground must be inconsistent with a claim on the other. We think the variance shown here is material. But it is apparent from the record that the matter not alleged was fully litigated, and, although the plaintiff's evidence of an agreement came in under objection, this Court may, in its discretion, permit an amendment of the declaration to correspond with the proof. *Chaffee* v. *Rutland Ry. Co.*, 71 Vt. 384, 45 Atl. 750.

The evidence of the agreement made with Benjamin was objected to on the ground that the first employment was by Swift & Co., "the whole corporation," and that the second employment was by Swift & Co. of Maine, a different corporation. This evidence was not offered under any claim that the agreement made with Benjamin was in force at the time the plaintiff received his injury, but solely as explanatory of the plaintiff's talk with Pinney. The only argument made against its admissibility, other than that relating to the claim of variance, is based on the change of ownership. This objection does not make against its admissibility for the purpose stated.

*The declaration having been amended, judgment is affirmed, but without costs in this Court on these exceptions.*

MUNSON, J., considers that the present case is within the principle of the former decision, and is therefore controlled by that decision as the law of the case, and concurs on this ground without further inquiry.