HARRY TINNEY *v.* ELBERT C. CROSBY.

May Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 7, 1941.

*Lawrence & O'Brien* for defendant.

*Asa S. Bloomer* for plaintiff.

MOULTON, C. J. The plaintiff was struck and severely injured by a stone thrown as the result of a blasting operation, in which he was employed. He brought this action in tort against the defendant, who was in charge, alleging negligence in the amount of explosive used, in the manner of placing it, and in failing to supply him with a safe place in which to do his work. The verdict was for the plaintiff, and the cause is here on the defendant's exceptions. These exceptions are to the admission of certain opinion evidence, and to the denial of a motion for a verdict.

The exceptions to the evidence present only one question. The plaintiff called several witnesses who testified to their experience in blasting and in the use of dynamite and other explosives. Each was asked substantially the same questions and was permitted to give substantially the same answers, subject to clearly expressed exceptions by the defendant. One instance will suffice to illustrate the point involved.

The witness Adelord Merrow was asked whether, based upon the evidence in the case, he had an opinion as to the cause of the injury to the plaintiff, and answered that he had. The next question was: "State what in your opinion was the cause of the injury to this plaintiff?", to which he replied "Well I should call it negligent use of high explosive." A motion to strike out this testimony was made and denied, subject to defendant's exception.

No. 47 of the Acts of 1939, upon which the plaintiff relies to support the rulings to which we have just referred, reads as follows: "Section 1. *Experts, testimony.* An expert witness may be asked to state his opinions, whether these opinions are based upon the witness' personal observation, or on evidence introduced at the trial and seen or heard by the witness, or on his technical knowledge of the subject, without first specifying hypothetically in the question the data on which these opinions are based. Section 2. *Same.* An expert witness may be required, on direct or cross-examination, to specify the data on which his opinions are based."

This statute is practically identical with section 9 of the Uniform Expert Testimony Act adopted by the National Conference of Commissioners on Uniform State Laws, in 1937, the only difference being that in the Act, as framed by the conference, the word "inferences" is used, where our act employs the word "opinions"; and it is the only part of the Uniform Act that has been passed by the Legislature of this State. The purpose and intent of the Statute, as clearly appears not only from its wording but from the comment appended thereto in the 1937 Handbook of the Conference, pp. 345-347, to which we may refer as an aid to its construction (*Peoples' Svgs. Bk. & Tr. Co.* v. *Munsert et al.*, 212 Wis. 449, 249 N. W. 527, 88 A. L. R. 1306, 1308, 1312), is to exempt the offering party from the requirement of using the hypothetical question in the examination of expert witnesses, but to accord him the option of using it, both to be left to the discretion of the trial Court, and to permit the opposing party on cross examination to call for a hypothetical specification of the data which the witness has used as the basis of his opinion. See Wigmore, Evidence, 2d. Ed., Sec. 686, quoted in the comment above referred to. It does not enlarge the scope of expert testimony or the class of subjects upon which opinion evidence is receivable.

100

As the comment states there is "no attempt to obstruct or limit the jury in its determination of the ultimate fact."

■ There was prejudicial error in the admission of the evidence and in the refusal to strike the answer from the record. The facts and circumstances of the case were susceptible of being made clear to the jury. The inference to be drawn from the evidence, if it fairly supported the plaintiff's claim, was one which the members of the jury, exercising their sound judgment under the instructions of the Court, were capable of drawing for themselves and did not require a particular knowledge and skill. The question of the defendant's negligence was, under such circumstances, for them to determine, and was not the subject of opinion evidence. This principle has been recognized in many decisions of this Court. *Hutchinson* v. *Knowles,* 108 Vt. 195, 204, 184 Atl. 705; *Lucas* v. *Kelley,* 102 Vt. 173, 176, 147 Atl. 281; *Landry* v. *Hubert,* 100 Vt. 268, 275, 137 Atl. 97; *Desmarchier* v. *Frost,* 91 Vt. 138, 143, 99 Atl. 782; *Houston* v. *Brush & Curtis,* 66 Vt. 331, 338, 29 Atl. 380; *Stowe, Admx.* v. *Bishop,* 58 Vt. 498, 500, 3 Atl. 494, 56 Am. Rep. 569; *Bemis* v. *C. V. R. R. Co.,* 58 Vt. 636, 639, 3 Atl. 531; *Weeks* v. *Lyndon,* 54 Vt. 638, 645; *Oakes* v. *Weston,* 45 Vt. 430, 432; *Fraser* v. *Tupper,* 29 Vt. 409, 410, 411; *Clifford* v. *Richardson,* 18 Vt. 620, 626; *Lester* v. *Town of Pittsford,* 7 Vt. 158, 161, 162. See, also, to the same effect: *Inland and Seaboard Coasting Co.* v. *Tolson,* 139 U. S. 551, 559, 11 Sup. Ct. 653, 35 L. Ed. 270, 273; *Whitman* v. *Boston Elevated Co.,* 181 Mass. 138, 139, 63 N. E. 334; *Twomey* v. *Swift,* 163 Mass. 273, 275, 39 N. E. 1018; *White* v. *Ballou,* 8 Allen (Mass.) 408, 409; *New Haven Rendering Co.* v. *Connecticut Co.,* 89 Conn. 252, 93 Atl. 528, 531; *Kelly* v. *City of Waterbury,* 96 Conn. 494, 114 Atl. 530, 531; *Baltimore, C. & A. Ry. Co.* v. *Moon,* 118 Md. 380, 84 Atl. 536, 539; *Hanrahan* v. *Mayor etc., of Baltimore,* 114 Md. 517, 80 Atl. 312, 317; *Taylor* v. *Kevlin,* 121 N. J. L. 142, 1 Atl. 2d. 433, 435; *Krieg* v. *Timken,* 102 N. J. L. 307, 131 Atl. 905, 906; *Chambers* v. *Mesta Machine Co.,* 251 Pa. 618, 97 Atl. 101, 103; *Hill* v. *Portland & R. R. Co.,* 55 Me. 438, 92 Am. Dec. 601, 605. What we have just said disposes of all the exceptions taken to this sort of testimony.

■ The motion for a directed verdict was based upon three grounds: (1) that there was no evidence fairly and reasonably

tending to show that the defendant was negligent; (2) that the evidence showed, as a matter of law, that the plaintiff was contributorily negligent, and (3) that he assumed the risk. In passing upon this motion we leave out of consideration the opinion evidence which we have just held was erroneously received, under objection and exception. *Booth* v. *N. Y. C. R. R. Co.,* 95 Vt. 9, 15, 112 Atl. 894; *Creech* v. *N. Y. C. and St. L. Ry. Co.,* 22 Ohio App. 216, 153 N. E. 299, 300; *Sartain* v. *Walker,* 60 Okla. 258, 159 Pac. 1096, 1105; *Gillett* v. *Burlington Ins. Co.,* 53 Kan. 108, 36 Pac. 52, 53.

In passing upon the motion for a directed verdict the evidence must be taken in the light most favorable to the plaintiff, and the ruling of the trial court sustained if the evidence, so viewed, fairly and reasonably tends to support the verdict. *Picknell* v. *Bean,* 99 Vt. 39, 41, 130 Atl. 578; *MacDonald* v. *Orton,* 99 Vt. 425, 427, 134 Atl. 599. The effect of modifying evidence is to be excluded. *Ste. Marie* v. *Wells,* 93 Vt. 398, 399, 108 Atl. 270. Contradictions and contradictory inferences are for the jury to resolve, *Lee* v. *Donnelly,* 95 Vt. 121, 128, 113 Atl. 542; *Comeau* v. *Manuel and Sons Co.,* 84 Vt. 501, 509, 80 Atl. 51. The tendency of the evidence and not its weight is to be considered. *Cummings* v. *Conn. Gen. Life Ins. Co.,* 101 Vt. 73, 85, 142 Atl. 82; *Fraser* v. *Blanchard and Crowley,* 83 Vt. 136, 147, 73 Atl. 995, 75 Atl. 797.

An examination of the record with the foregoing principles in mind, shows that it was open to the jury to find these facts: The purpose of the blasting was to remove boulders from the bed of a stream known as Roaring Branch Brook in order to prevent flooding of the adjacent land and highway in times of high water. These boulders were composed of hard brittle stone, of varying size and weighing on the average 15 to 20 tons. Some were embedded in the gravel, and the bed of the stream was thickly covered with them. The course of the stream, at the places where the blasting was done, is from north to south, and its average width is twenty-five to thirty feet.

The plaintiff, who was one of the gang of men employed in the blasting operations, lived with his family in a house situated about 600 feet west of Roaring Branch Brook. He was forty years old and had worked as a common laborer. Five years be-

fore the accident he had served as temporary helper to a dynamite foreman for about two months on highway work, his duties being to bring the boxes of dynamite to the place of the blast and then to go some distance away to give warning to anyone who might be approaching, although there were a few times when he would take shelter with the foreman when the latter exploded the charge. He had also been permitted to explode some very small blasts involving small stones under the personal supervision of his foreman who refused to recommend him as being competent for a position as dynamiter.

The blasting had been going on for three days previous to the one upon which the plaintiff was injured. The method employed was what was termed as "open blasting." A number of sticks of 60% dynamite would be inserted in a cavity dug under the boulder to be removed, detonating caps adjusted and attached to a wire which led to a battery operated by pushing down a plunger. Several charges, as many as six or seven, put in different cavities under different boulders would be connected and exploded simultaneously. The charge varied with the size of the cavity, but no more than fifty pounds in any one place, and on the average a little less than 150 pounds in an entire blast. The battery, on the first three days, was placed beside a large elm tree some 50 feet northeast of plaintiff's house, and the defendant, who operated it, would take shelter behind this tree while so doing. As shown by a plan drawn to scale the elm tree was 550 feet distant from the center of the brook. During the first three days of the operation fragments of stone had been thrown by the explosion and had fallen around the tree and within 50 or 60 feet of the plaintiff's house; and one stone had struck an automobile parked some 800 feet from the blast. Windows in the plaintiff's house, and in other houses farther away, had been broken by the concussion. The plaintiff had seen the defendant firing the blasts. During this time his work consisted in bringing the dynamite to the designated boulders, digging holes under them and placing the charge of explosive therein, under the directions of the man in charge.

Nothing was put over the charges to confine the explosion and prevent the fragments of rock from being thrown; but the dynamite was placed beneath the surface of the water under the

boulders. There were other methods of blasting, known as "snake holding," "block hole blasting" and "mud capping," which were known to the defendant, and which if properly used would shatter or heave the boulder without throwing the fragments to any distance, although the progress of the work would be slower. It is true that there was evidence that these methods would not be practical and efficient under the circumstances disclosed, but there was enough to make a question for the jury upon the point.

The defendant testified that, because dynamite is a very dangerous substance, there were certain precautions to be taken for the protection of those working under his charge; that even with a small blast, no one should be permitted to remain within 500 feet of it, and this distance should be increased as the blast grew larger, unless there was some good protection.

Up to the day of the accident the defendant's son, who was the town road commissioner, had been in charge of the operation, and the defendant had fired all the blasts, but on that day the commissioner was ill and the defendant took charge. He told the plaintiff to "push the battery" that day, and the latter did so. Several blasts were set off during the morning and early afternoon, without any trouble from flying stones. These blasts varied in size. Late in the afternoon the last blast of the day was prepared. The plaintiff dug a hole with his hands under a boulder about three feet square on top, and asked the defendant whether the cavity was all right. The defendant said that it was. The plaintiff then asked how much dynamite was to be put in, and the defendant said: "Fill it up." The plaintiff put in ten sticks, told the defendant the number, and said that perhaps it would be a little too much for the size of the stone, to which the defendant replied: "No, that is all right." More dynamite was placed, but how much more the plaintiff did not know. There was evidence, however, tending to show that, in all, 150 pounds was used in the entire blast, and that the defendant was aware of it. After the explosive had been put in position the plaintiff said to the defendant that, in the course of their work, they had come to a point in the brook nearly opposite the spot where the battery had been placed, and suggested that it should be moved farther away. It was mentioned that there was wire at hand that could be used for this purpose, but the defendant replied that this was not necessary.

104

The defendant connected the various parts of the blast, tested the wires, and placed the battery in the plaintiff's garden, about 25 feet south of the elm tree. He told the plaintiff to "touch it off" when he should blow his automobile horn, and went along the road to warn anyone who might be coming. The plaintiff heard the horn, called to his wife to assure himself that his children were in the house, went to the road and looked along it, and then returned to the battery and pulled up the handle and pushed it down. Immediately there was an explosion much greater than any preceding one. The ground rumbled, and a bright flash, with a wind that nearly knocked him down, passed by the plaintiff. Pieces of rock flew about him and he started to run for shelter behind the tree, but he was struck and rendered unconscious before he could reach safety. The force of the explosion was such that a log was thrown into the garden and the steps of the house damaged by a stone. Windows in a barn nearly two miles away were broken by the concussion.

The defendant was bound to furnish the plaintiff with a reasonably safe place in which to work. *Ryder* v. *Vermont Last Block Co.*, 91 Vt. 158, 165, 99 Atl. 733. It was also his duty to instruct and caution the plaintiff concerning a danger of which the latter was excusably ignorant. *Sanderson* v. *Boston and Maine R. R.*, 91 Vt. 419, 424, 101 Atl. 40; *Carlton* v. *E. & T. Fairbanks & Co.*, 88 Vt. 537, 547, 93 Atl. 462. Since dynamite is, as a matter of law, considered to be a dangerous agency, it was incumbent upon the defendant to take every proper precaution to prevent injury to the plaintiff, and nothing short of a high degree of care would be commensurate with the dangerous character of the explosive, such degree being gauged by the care and prudence that careful and prudent men would exercise in like circumstances. *Goupiel* v. *Grand Trunk Ry. Co.*, 94 Vt. 337, 342, 343, 111 Atl. 346.

On the evidence the question of the defendant's negligence was for the jury, who might well conclude that the place where the battery was placed by him, and where the plaintiff was told to operate it, was not reasonably safe; that the plaintiff was excusably ignorant of the size of the blast and was given no warning or caution concerning it; and that the use of "open blasting" in view of the evidence tending to show that there were other

methods, known to the defendant, fraught with less danger from flying stones, indicated a failure to exercise the requisite degree of care in the circumstances. *Booth* v. *R., W. and O. Terminal R. Co.,* 140 N. Y. 267, 35 N. E. 592, 24 L. R. A. 105, 107, 37 Am. St. Rep. 552. See, also, *Blackwell* v. *Moorman and Co.,* 111 N. C. 151, 16 S. E. 12, 17 L. R. A. 729, 732, 32 Am. St. Rep. 786.

The issue of contributory negligence was also for the jury. The defendant argues that the plaintiff knew that other explosions had thrown fragments of rock near, and beyond, his house; that he had observed the defendant take shelter behind the elm tree, when firing the blasts, and that, if he had used due care, he would have done likewise. But nothing untoward had happened on the day of the accident when the plaintiff had fired the blasts until the last one took place. The inference might reasonably be drawn that, under these circumstances, the plaintiff was justified in assuming that the blasts were not as heavy as they had been on the previous days and, consequently, that he was not in a position of danger. See *Lassasso* v. *Jones Bros. Co.,* 88 Vt. 526, 534, 93 Atl. 266. He had the right to presume that the defendant would warn and save him from needless exposure to injury. *Barclay* v. *Wetmore and Morse Granite Co.,* 92 Vt. 195, 198, 102 Atl. 493.

While the plaintiff assumed the ordinary risks of his employment, he did not assume the risks arising from the negligence of the defendant, unless he knew and comprehended them or they were so obvious that he must be taken to have had such knowledge and comprehension. *Miner* v. *Franklin County Tel. Co.,* 83 Vt. 311, 318, 75 Atl. 653, 26 L. R. A. (N.S.) 1195; *Vaillancourt* v. *Grand Trunk Ry. Co.,* 82 Vt. 416, 435, 74 Atl. 99; *Harris* v. *Bottum et al.,* 81 Vt. 346, 353, 70 Atl. 560; *Drown* v. *N. E. Tel. and Tel. Co.,* 80 Vt. 1, 15, 66 Atl. 801. "The doctrine of assumption of risk involves a sufficiently exact appreciation of the nature and extent of the danger to enable the servant to estimate the possibilities of his surroundings so far as they affect his safety." *Wiggins* v. *E. Z. Waist Co.,* 83 Vt. 365, 370, 76 Atl. 36, 38. Furthermore this doctrine which is quite apart from the doctrine of contributory negligence (*Gover* v. *C. V. Ry. Co.,* 96 Vt. 208, 213, 118 Atl. 874; *Duggan* v. *Heaphy,* 85 Vt. 515, 523, 83 Atl. 726) is founded upon the maxim *"volenti non fit injuria,"* and so it is

not enough that the plaintiff knew and appreciated the danger; it must also appear that his act was a voluntary one within the meaning of the maxim, that is, the result of his intelligent choice. *Gover* v. *C. V. Ry. Co.,* 96 Vt. 208, 214, 215, 118 Atl. 874; *Lavelle's Admr.* v. *C. V. Ry. Co.,* 94 Vt. 80, 84, 108 Atl. 918; *Dailey* v. *Swift and Co.,* 86 Vt. 189, 192, 84 Atl. 603.

The evidence falls short of showing conclusively that the plaintiff knew and comprehended the risk and voluntarily assumed it. It tended to show that he was ignorant of the amount of dynamite used in the blast that caused his injury, and, in the circumstances, the law does not impute knowledge of it. He had the right to assume that the defendant was mindful of his safety, and was not bound to inquire the reason for the course taken, or to pass judgment upon the method employed or its sufficiency. *Duggan* v. *Heaphy,* 85 Vt. 515, 523, 83 Atl. 726; *Miner* v. *Franklin County Tel. Co.,* 83 Vt. 311, 320, 75 Atl. 653, 26 L. R. A. (N.S.) 1195; *Marshall* v. *Dalton Paper Mills,* 82 Vt. 489, 502, 74 Atl. 108, 24 L. R. A. (N.S.) 128.

It is argued that the fact that, before firing the blast, he took pains to ascertain that his children were in the house demonstrates that he realized the danger of his position; but this circumstance is also capable of explanation as being due to a natural parental anxiety to be assured that none of the children had wandered to the immediate vicinity of the blast without his knowledge. It would be for the jury to say what construction should be put upon this incident.

Moreover, the evidence that the defendant had told the plaintiff, with regard to the charge of dynamite that the latter had placed, that it was all right, and had said that it was not necessary to remove the battery to a greater distance from the blast, might be taken by the jury as a representation which lulled the plaintiff into a sense of security, and therefore refuted the inference that he voluntarily assumed the risk, even if he had known and comprehended it, or ought to have done so. *Skinner, Admr.* v. *C. V. R. R. Co.,* 73 Vt. 336, 340, 50 Atl. 1099; *Dailey* v. *Swift and Co.,* 86 Vt. 189, 198, 84 Atl. 603; *Blanchard* v. *Vt. Shade Roller Co.,* 84 Vt. 442, 446, 79 Atl. 911; and see *Harris* v. *Bottum et al.,* 81 Vt. 346, 354, 70 Atl. 560. And the evidence to the effect that he fired the blast in compliance with an order from

the defendant, at the place where the latter had put the battery, connected and ready for firing, tended to rebut the same inference. *Cross* v. *Passumpsic Fibre Leather Co.,* 90 Vt. 397, 410, 98 Atl. 1010; *Milland* v. *West-End St. Ry. Co.,* 173 Mass. 512, 514, 53 N. E. 900.

There was no error in the denial of the motion for a verdict.

*Judgment reversed and cause remanded.*